JOHN R. GIBSON, Circuit Judge.
 

 Thomas J. Carlson, trustee in bankruptcy for Larry Gene Brock, challenges the district court’s
 
 [1]
 
 finding that an agreement between Brock and Tandy Computer Leasing was a lease rather than an.installment sale. The bankruptcy court, applying Missouri law and considering certain parol evidence, held that the purported lease of computer equipment from Tandy to Brock was actually an installment sale, which gave the trustee in bankruptcy priority over Tandy, an unperfected creditor. The district court reversed, concluding, under Texas law and without considering certain parol evidence, that the agreement was a lease. In this appeal, Carlson argues that the district court erroneously (1) applied Texas rather than Missouri law; (2) refused to consider parol evidence offered to prove the existence of a purchase option not mentioned in the agreement; and (3) concluded that the agreement was not an installment sale, but rather a lease. We affirm.
 

 Brock entered an agreement with Tandy involving computer equipment. A document designated a lease was signed by a representative of Tandy, as lessor, and Brock, as lessee. The document provided that specified computer equipment was to be leased from Tandy to Brock for forty months. The document required return of
 
 *393
 
 the equipment to Tandy at the end of this period. The prepaid first month’s rent, the security deposit, a schedule of rent payments, and a description of the equipment and its total cost were stated in the document. The document contained no provision requiring or allowing Brock to purchase the equipment at the termination of the forty-month period.
 

 Following the filing of a petition in bankruptcy, Carlson, as trustee in bankruptcy for Brock, sought the computer equipment on the basis that Tandy’s interest in the property was an unperfected security interest. Tandy resisted, contending that the agreement was a lease, which gave it the right to repossession. At the bankruptcy court hearing, the court allowed Brock to testify over objection that Brock and Tandy orally agreed that at the termination of the lease agreement, Brock could purchase the equipment for around six or seven percent of the equipment’s original cost. The bankruptcy court concluded that since the document itself contained no mention of an option to purchase the equipment, the parol evidence rule did not bar the introduction of evidence that did not vary, but rather supplemented, the terms of the original agreement. The bankruptcy court also relied on evidence, introduced through interrogatory answers, that eighty-five percent of all equipment leased by Tandy is eventually purchased by lessees at the conclusion, of a lease for twelve percent of the equipment’s original cost. Applying Missouri law, the bankruptcy court concluded that the agreement between Brock and Tandy was an installment sale, that Tan-dy’s security interest was unperfected, and that the trustee was entitled to the computer equipment.
 

 On appeal, the district court first held that because the agreement between Tandy and Brock provided that it was to be governed by Texas law and because the application of Texas law would not violate a fundamental policy of any other state, Texas law should be applied to evaluate the bankruptcy court’s decision.
 
 [2]
 
 Under Texas law, the district court found that the parol evidence rule barred the testimony concerning the existence of a purchase option, and concluded that the agreement between Brock and Tandy was a lease.
 

 I.
 

 The written agreement between Brock and Tandy provided that the lease “shall be governed and construed in accordance with Texas law.” The computer equipment was at all relevant times located in Missouri. Therefore, our threshold inquiry is whether Texas or Missouri law governs the substantive issues raised by Carlson. The difficulty in analyzing this choice of law inquiry is that it requires us to consider the ultimate substantive issue in this appeal, whether the agreement between Brock and Tandy is a lease intended as a security interest. We conclude that because the dispute in question implicates the rights of third party creditors, Missouri law should be applied.
 

 In order to determine the applicable law in this action, we look to the choice of law rules of the forum state, Missouri. Since no Missouri court has specifically addressed the present question, we must apply the rule we believe Missouri’s highest court would follow.
 
 Tucker v. Paxson Machine Co.,
 
 645 F.2d 620, 624 (8th Cir.1981). Missouri courts recognize that parties to a contract may generally agree that the contract shall be governed by the law of a chosen state, provided some element of the contract is properly referable to that state.
 
 See Hansen v. Duvall,
 
 383 Mo. 59, 62 S.W.2d 732 (1933). Section 1-105 of Missouri’s version of the Uniform Commercial Code (Missouri U.C.C.) codifies this principle, while subjecting it to specific limitations.
 
 [3]
 
 One such limitation is found in sec
 
 *394
 
 tion 9-102 of the Missouri U.C.C., which provides that Article 9 of the Missouri U.C.C. shall apply to any transaction intended to create a security interest in personal property located in Missouri.
 
 [4]
 
 A “lease intended as security” is one type of security interest included in section 9-102. Thus, under section 1-105 of the Missouri U.C.C., parties to a transaction are generally free to choose which state’s law shall govern disputes arising from that transaction
 
 unless,
 
 among other things, the dispute falls within the scope of section 9-102.
 

 The policy behind section 1-105(2), especially as it relates to the scope of Article 9 of the Missouri U.C.C., is to prohibit choice of law agreements when the rights of third parties are at stake.
 
 See
 
 Mo.Ann.Stat. § 400.1-105(2) Uniform Commercial Code Comment 5 (Vernon 1965). If we applied Texas law to determine whether a security interest existed here, this would violate a fundamental purpose of Article 9: to create commercial certainty and predictability by allowing third party creditors to rely on the specific perfection and priority rules that govern collateral within the scope of Article 9. In order to prevent the constant unilateral expansion and contraction of the scope of Missouri’s Article 9, a Missouri court would apply Missouri law to determine the scope of Article 9 of the Missouri U.C.C.
 

 The present case is unlike those situations where only the rights of parties privy to the initial choice of law agreement are implicated.
 
 See Funding Systems Leasing Corp. v. King Louie International, Inc.,
 
 597 S.W.2d 624, 629 (Mo.Ct.App.1979);
 
 cf. Cooper v. Cherokee Village Development Co.,
 
 236 Ark. 37, 364 S.W.2d 158 (1963);
 
 Industrial Packaging Products Co. v. Fort Pitt Packaging International, Inc.,
 
 399 Pa. 643, 161 A.2d 19 (1960). In those situations, no policy is furthered by refusing to allow the parties to select the law governing their rights alone. Nor is this a case where, despite the existence of a secured transaction, no issues concerning the scope or matters within the scope of Article 9 are raised.
 
 See First National Bank v. Insurance Centers, Inc.,
 
 560 F.Supp. 1261, 1263-64 (E.D.Mo.1983) (applying Missouri choice of law analysis);
 
 see also Skinner v. Tober Foreign Motors, Inc.,
 
 345 Mass. 429, 187 N.E.2d 669 (1963). Instead, the question here concerns the scope of Article 9 of the Missouri U.C.C. Section 1-105(2) of the Missouri U.C.C. requires that we apply Missouri law.
 

 II.
 

 Carlson initially challenges the district court’s finding that the document signed by Brock and Tandy represented a completely integrated agreement, which could not be supplemented by parol evidence.
 
 *395
 
 The district court based its finding on a clause in the document that states:
 

 This lease contains the entire and only understanding between Lessor and Lessee relating to the subject matter hereof. No covenant or condition of this Lease can be waived, amended, or modified except by instrument in writing and signed by the duly authorized representatives of all parties. Any representations, promises or conditions not contained herein shall not be binding unless in writing and signed by such duly authorized representative of Lessor.
 

 Applying Missouri law, we cannot conclude that the district court erred in holding that the document signed by Brock and Tandy constituted a completely integrated agreement.
 
 See W.E. Koehler Construction Co. v. Medical Center,
 
 670 S.W.2d 558, 562 (Mo.Ct.App.1984). Accordingly, the parol evidence rule barred testimony concerning the existence of a contemporaneous oral agreement relating to an option to purchase the computer equipment. Moreover, even if we accepted Carlson’s argument that the document was only a partially integrated agreement, we would still agree with the district court that the testimony relating to the purchase option should have been barred since that testimony contradicted the portion of the document that required Brock to return the computer equipment to Tandy at the termination of the lease.
 
 See Garden Parks Home Corp. v. Martin Marietta Corp.,
 
 507 S.W.2d 368, 373-74 (Mo.1974).
 

 Carlson’s final argument is that the district court erred in concluding that the agreement between Tandy and Brock was a lease. An examination of the written agreement as well as all other admissible evidence indicates that the district court correctly concluded that the agreement between Brock and Tandy was a pure lease, not a lease intended as a security interest. As to whether a lease is intended as security, section 1-201(37) of the Missouri U.C.C. provides:
 

 Mo.Rev.Stat. § 400.1-201(37) (1978).
 

 In support of his contention that the agreement between Brock and Tandy was a lease intended as security, Carlson notes several factors: eighty-five percent of Tan-dy’s computers are ultimately sold to lessees; the agreement between Brock and Tandy was a forty-month lease, yet the computer equipment becomes obsolete in approximately three years; the total sum of the lease payments far exceeded the original value of the computer equipment; Brock assumed many incidents of ownership, such as risk of loss, duty to insure, and duty to pay taxes; and, Tandy had the right, upon default, to accelerate Brock’s duty to pay all future rental payments.
 

 While these factors are not insignificant, we cannot conclude that they override the intent of the parties, as expressed in the written document, to create nothing more than a lessor-lessee relationship. The document consistently uses “lease language” to refer to the creation of a lease between the lessor and lessee. The paramount attribute of a lease, retention of title in the lessor, is found in a clause of the document, which states in clearest terms that the agreement is only a lease.
 
 [5]
 

 Cf. RCA Corp. v. State Tax Commission,
 
 513 S.W.2d 313, 316 (Mo.1974) (noting the sig
 
 *396
 
 nificance of “lease language” and express retention of title in the lessor).
 

 Most important, however, is the absence of any manifestation that Brock had the duty or even the option to purchase the computer equipment at the termination of the lease. In
 
 RCA Corp. v. State Tax Commission,
 
 513 S.W.2d at 313, the Missouri Supreme Court indicated that an absolute obligation by the lessee to purchase rental property is the touchstone in determining whether a security interest was intended. The court held that an agreement in which a purchase option existed was only a lease because
 
 “[t]here is no absolute obligation on the [lessee] to purchase, pay for, or assume title to the equipment at any time prior to exercise of the option to purchase. Whether that ever happens is entirely optional witk the [lessee].
 
 ”
 
 Id.
 
 at 316 (emphasis in original);
 
 see also Clune Equipment Leasing Corp. v. Spangler,
 
 615 S.W.2d 106 (Mo.Ct.App.1981) (noting the necessity of at least a purchase option and then concluding that a security interest existed, but only after finding that the lessor was essentially a purchasing agent for lessees, who could purchase the goods at the end of a lease for one dollar).
 

 Brock did not even have an option to purchase the computer equipment, let alone an absolute duty. To the contrary, the agreement specifically required Brock to return the equipment to Tandy at the conclusion of the lease. The possibility that the parties would enter a separate sales transaction at the termination of the lease agreement, an agreement in which Tandy retained title and the ultimate right to possession, does not transform the lease into an installment sale.
 

 Having concluded that the agreement in question does not fall within the scope of Article 9 of the Missouri U.C.C., we recognize that hindsighted analysis might indicate that the parties’ choice of law agreement should be respected under section 1-105 of the Missouri U.C.C. Still, while we would affirm the district court’s judgment under either Texas or Missouri law, we feel that' because the substantive issues here concerned the rights of third parties under Article 9 of the Missouri U.C.C., Missouri law should be applied.
 

 Therefore, the judgment of the district court is affirmed.
 

 [1]
 

 . The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.
 

 [2]
 

 . The parties did not brief the issue of whether Texas or Missouri law should be applied in the proceedings before the district court.
 

 [3]
 

 . Section 1-105 provides, in part:
 

 (1) Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of
 
 *394
 
 such other state or nation shall govern their rights and duties. Failing such agreement this chapter applies to transactions bearing an appropriate relation to this state.
 

 (2) Where one of the following provisions of this chapter specifies the applicable law, that provision governs and a contrary agreement is effective only to the extent permitted by the law (including the conflict of laws rules) so specified:
 

 [[Image here]]
 

 Policy and scope of the Article on Secured Transactions. Sections 400.9-102 and 400.9-103.
 

 Mo.Rev.Stat. § 400.1-105 (1978).
 

 [4]
 

 . Section 9-102 provides, in part:
 

 (1) Except as otherwise provided in section 400.9-103 on multiple state transactions and in section 400.9-104 on excluded transactions, this article applies so far as concerns any personal property and fixtures within the jurisdiction of this state
 

 (a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights; and also
 

 (b) to any sale of accounts, contract rights or chattel paper.
 

 (2) This article applies to security interests created by contract including pledge, assignment, chattel mortgage, chattel trust, trust deed, factor’s lien, equipment trust, conditional sale, trust receipt, other lien or title retention contract and lease or consignment intended as security. This article does not apply to statutory liens except as provided in section 400.9-310.
 

 Mo.Rev.Stat. § 400.9-102 (1978).
 

 [5]
 

 . The clause states:
 

 Nothing contained in this Lease shall be construed to convey to or create in Lessee any right, title or interest in or to the Equipment, except those rights and interests of
 

 Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security. a Lessee. Lessor and Lessee confirm their intent that the Equipment shall always remain and be deemed personal property, even though it may be or may become attached or affixed to realty.