**In re OPEN DOOR PRESS, INC., d/b/a
Plus Communications, Debtor.**

**In re INTERNAL REVENUE
SERVICE, Movant.**

**Bankruptcy No. 87–00661–293.
Motion J.**

United States Bankruptcy Court,
E.D. Missouri, E.D.

July 9, 1992.

---

884

Larry A. Reed, St. Louis, Mo., for debtor.

Robert D. Metcalfe, Trial Attorney, Tax Div., U.S. Dept. of Justice, Washington, D.C.

David A. Warfield, St. Louis, Mo., for IFS.

Frederick J. Dana, Asst. U.S. Atty., St. Louis, Mo.

Donna M. Sommars, St. Louis, Mo., for Marinebanc Leasing.

David A. Sosne, St. Louis, Mo., trustee.

James S. Cole, St. Louis, Mo., Asst. U.S. Trustee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Chief Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A), which the Court may hear and determine.

### PROCEDURAL BACKGROUND

1. Open Door Press, Inc. d/b/a Plus Communications (collectively, ODP) filed a voluntary petition under Chapter 11 of the Bankruptcy Code on March 6, 1987.

2. ODP's schedules listed its debt to International Financial Services as disputed and itemized the property (machines) allegedly collateralizing the debt.

3. On March 20, 1987, Capital America, Inc., as International Financial Services' assignee, moved the court to modify the automatic stay, assure them of adequate protection or to compel Debtor to assume or reject what it claimed was an executory personal property lease originally between Debtor and International Financial Services.

4. ODP applied for authority to sell substantially all of its assets to NEWCO Inc. (NEWCO) outside the ordinary course of business and to assume and assign certain executory contracts and unexpired leases.

5. The Internal Revenue Service moved the court to place the proceeds from Debtor's intended sale of property to NEWCO in an interest-bearing escrow account pending determination of the priority of ODP's creditors to such funds.

6. Debtor entered an asset purchase agreement with NEWCO on December 9, 1987 and the court, in an order dated December 11, 1987, approved the sale and ordered the proceeds put in escrow until December 21, 1987, at which time they would be released to certain parties specified in the order unless the IRS objected to a disbursement.

7. The court's December 11, 1987 order provided, among other things, that Marinebanc Leasing Co., Inc. (as assignee of the lease between ODP and IFS) would receive $22,500 from the proceeds of the asset sale.

8. The Internal Revenue Service filed an objection to the disbursement of any funds from the escrow account to Marinebanc Leasing Company, Inc.

### FACTUAL BACKGROUND

Upon a consideration of the record and argument of counsel, the court finds the following facts:

1. On January 4, 1984, ODP entered into an agreement with International Financial Services Corporation (IFS) under which ODP purported to lease four pieces of machinery from IFS. The machinery consisted of rare laminating equipment to be used in ODP's book-binding operations.

2. The agreement, entitled "Lease No. 83–252", refers to ODP as the "lessee" and IFS as the "lessor". The agreement obligated ODP to pay IFS $1,173 rent each month of the sixty month lease term.

3. Lease No. 83–252's terms include provisions:

a. allowing ODP, under certain circumstances, to extend the lease, in one year increments, beyond the initial sixty month term of the lease;

b. disclaiming all warranties between IFS and ODP regarding the equipment subject to the lease;

c. placing the costs of maintenance and repair of the equipment upon ODP;

d. requiring ODP to return the equipment to IFS upon the expiration or termination of the lease;

e. reserving title to the equipment in IFS;

f. prohibiting ODP from encumbering the equipment with liens;

g. requiring ODP to pay any taxes levied on the equipment;

h. authorizing IFS to file financing statements and security agreements with respect to the equipment;

i. requiring ODP to carry insurance on the equipment;

j. placing the risks of loss and damage to the equipment on ODP;

k. giving ODP the option to purchase the equipment at the end of the sixty month term by making a sixty-first payment equal in amount to the prior sixty monthly payments under the lease, so long as ODP has performed all the terms and conditions under the lease.

4. ODP did not meet its obligations under Lease 83–252 in that it missed making a monthly payment and, therefore, under the terms of that agreement, could not have exercised the purchase option at the end of the lease term.

5. The instrument ODP and IFS executed was a form IFS routinely used with its customers. Mr. Paul Mazur, a representative of IFS testified that most of IFS's customers whose leases included the purchase option found in Lease 83–252 chose to exercise the option and purchase the equipment at the lease term's expiration.

6. Mr. Mazur also testified that IFS considers itself to be the owner of all the equipment it leases despite the inclusion of purchase options in the leases it often uses. Further, Mr. Mazur testified that some lessees whose agreements with IFS included purchase options similar to ODP's have opted not to purchase the equipment they had previously leased from IFS and that in such cases the lessees walked away from the option and IFS retook possession of the equipment.

7. Mr. Mazur testified that the parties agreed that a sixty-first payment equal to the prior sixty monthly rental payments under the lease would be a fair option price because, given the new and rare nature of the equipment, there was no way to estimate what the equipment would be worth at the lease term's end.

8. ODP's former president, Mr. Gerold Peters, negotiated the lease with IFS on ODP's behalf. Mr. Peters testified that ODP considered the transaction with IFS to be a sale and not a lease.

9. Fourteen days after ODP and IFS executed Lease 83–252, IFS assigned its interest in the lease to Marinebanc Leasing Corporation (Marinebanc).

10. After executing the lease with ODP, IFS filed with the Missouri Secretary of State's Office, a financing statement describing the equipment it leased to ODP. Mr. Mazur testified that IFS does this as a defensive measure to protect its ownership interest in the equipment it leases.

11. ODP failed to pay over to the federal government their FICA withholdings in the first three quarters of 1984. The IRS determined that substantial taxes, interest and penalties were owing and on April 23, 1985, filed with the Recorder of Deeds for Saint Louis County, a notice of federal tax lien against ODP in the amount of $179,-863.96.

DISCUSSION

The IRS initially asserted in its Objection that the agreement between the Debtor and IFS was a lease and not a security

**886**

agreement. Therefore Marinebanc, as the assignee of IFS would not have a security interest in the equipment. In the alternative the IRS asserts that the transaction underlying Lease 83–252 constituted a secured sale of equipment from IFS to ODP and did not establish a lessor/lessee relationship between the parties. The IRS further alleges that IFS failed to properly perfect its secured interest when it filed a financing statement with the Missouri Secretary of State's Office but not with the Recorder of Deeds for Saint Louis County. The IRS concludes that its perfected tax lien takes priority over Marinebanc's improperly, and hence unperfected, interest and entitles the IRS to those proceeds of the asset sale set aside for Marinebanc under this court's December 11, 1987 order which have since been held in escrow pending this decision.

■ Whether a contract creates a secured interest or establishes a lessor/lessee relationship is a question regarding the nature of property interests which this court must resolve by reference to state law. *In re Brower*, 104 B.R. 226 (Bankr.D.N.D. 1988) (citing *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)).

■ The Missouri Supreme Court in *RCA Corp. v. State Tax Commission*, 513 S.W.2d 313 (Mo.1974), addressed the issue of when a court will consider a transaction resembling a lease to be a secured sale. In *RCA,* two state agencies leased computers from RCA. The instruments creating the relationships between the parties each bore the title "lease" and referred to RCA as the "lessor" and to the contracting state agency as "lessee". Other provisions in the leases: reserved title in RCA; allowed the agencies to cancel the leases; gave the agencies unrestricted use of the leased equipment; obligated RCA to maintain the machines for the seven year term of the leases; and gave the agencies the option to purchase the computers at the end of the lease terms for no additional consideration. The State of Missouri assessed a personal property tax for the computers against RCA. RCA denied responsibility for the tax, arguing that under the Uniform Commercial Code (U.C.C.) as adopted in Missouri, the leases constituted secured sales.

Having sold the computers to the agencies, RCA argued, it had no taxable property interest in the machines. The Missouri Supreme Court held that the agreements between RCA and the agencies were leases. The Court noted that the instruments utilized "lease language", reserved title in RCA, and did not require the agencies to insure the machines against loss. However, the state high court pinned its holding on the fact that "[t]*here is no absolute obligation on the agency to purchase, pay for, or assume title to the equipment at any time prior to exercise of the option to purchase. Whether that happens is entirely optional with the agency.*" 513 S.W.2d at 316 (emphasis in original).

The Missouri legislature had adopted the U.C.C. prior to the Missouri Supreme Court's decision in *RCA*. The U.C.C. as then in effect in Missouri and as quoted by the Missouri Supreme Court provided that:

" 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer ... is limited in effect to a reservation of a 'security interest'.... Unless a lease ... is intended as security, reservation of title thereunder is not a 'security interest'.... Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

513 S.W.2d at 315–16 (quoting Mo.Rev.Stat. § 400.1–201(37) (1969)). Though the Missouri Supreme Court quoted section 400.1–201(37) in its *RCA* opinion and though the leases in that case appeared to give the agencies the computers at the end of the seven year lease terms so long as they had made all their payments under the leases, the court held, as outlined above, that the

instruments at issue in fact created leases and not security interests. 513 S.W.2d at 316.

Lower courts in Missouri that have analyzed documents to determine whether they created security interests or leases have generally followed the Missouri Supreme Court's analysis in *RCA* and found instruments to create leases when the return of the leased property was either required or permitted regardless of the option price. *See Chase Third Century Leasing v. Williams,* 782 S.W.2d 408 (Mo.Ct.App.W.D. 1989) (involved an option to purchase at the fair market value at the end of the lease term but the court still analyzed the lease at issue under a standard derived from *RCA,* focusing on whether the lessee was either required or permitted to return the leased property); *Clune Equip. Leasing v. Spangler,* 615 S.W.2d 106 (Mo.Ct.App.S.D. 1981) (court applied *RCA's* test and held that a document including an option to purchase the leased property for one dollar after the lessee had complied with the other terms of the lease created a lessee/lessor relationship and not a security interest); *Commercial Credit Equip. v. Colley,* 542 S.W.2d 329 (Mo.Ct.App.W.D.1976).

The Eighth Circuit has also applied the Missouri Supreme Court's *RCA* decision. *Carlson v. Tandy Computer,* 803 F.2d 391 (8th Cir.1986). In *Carlson,* the Eighth Circuit held that, under Missouri law, the facts that: the lessee had assumed the risk of loss of the leased equipment; the lessee had assumed the duty to insure the leased equipment; the lessee had assumed the duty to pay any taxes assessed on the leased equipment; the agreement between the parties provided for the acceleration of all future sums due under if the lessee defaulted; and the equipment lease ran forty months but the equipment would be obsolete in three years could not override the parties' intent as expressed in the instrument which included the "paramount attribute of a lease, retention of the title in the lessor." *Id.* at 395. However, even more important under Missouri law, the Circuit Court noted, was "the absence of any manifestation that [the lessee] had the duty or even the option to purchase the computer equipment at the termination of

the lease." *Id.* at 396. In contrast, the instant case does provide ODP with the option to purchase at the end of the lease.

■ In its most recent case addressing the issue of whether an instrument created a lease arrangement or a security interest, the Missouri Court of Appeals for the Western District of Missouri, applied Missouri's U.C.C. as codified in Mo.Rev.Stat. § 400.1–201(37) without referring to the Missouri Supreme Court's *RCA* decision. *Commercial Credit Equip. v. Parsons,* 820 S.W.2d 315 (Mo.Ct.App.W.D.1991). The *Parsons* court looked to section 400.1–201(37) and reasoned that it directed the court to apply a two part analysis in evaluating instruments to determine whether they create security interests. *Id.* at 319. The *Parsons* court decided that under the U.C.C. it first had to determine whether the agreement allowed the "lessee" to acquire the property "for no additional consideration or for nominal consideration," and that if it did the agreement would be considered one for security. 820 S.W.2d at 319. After finding that the agreement at issue did not contain such an option, the *Parsons* court, again drawing upon the language of Missouri's U.C.C., determined that it had to look to the facts of the case to decide whether the instrument created a lease or a security interest. *Id.* The court noted a number of "regular factors that bear on whether the terms of an agreement are meant as a true lease or for security" including:

> "(1) the lessee is required to insure the goods in favor of the lessor,
>
> (2) the lessee bears the risk of loss or damage,
>
> (3) the lessee is to pay for taxes, repairs and maintenance,
>
> (4) the agreement establishes default provisions governing acceleration and resale,
>
> (5) the warranties that usually attend true leases are expressly disclaimed and excluded,
>
> (6) the lessor lacks the facilities to store or retake the goods."

820 S.W.2d at 320 (citing *Colonial Leasing Co. v. Larsen Bros. Constr. Co.,* 731 P.2d

483, 487 (Utah 1986)). The *Parsons* court found all six of the above elements and held that the agreement was one for security governed by Article Nine of the Uniform Commercial Code. 820 S.W.2d at 320.

This court agrees with the *Parsons* court's interpretation of Mo.Rev.Stat. § 400.1–201(37). In the instant case, the agreement between IFS and ODP provides that so long as ODP has made all its lease payments to IFS in a timely manner it can purchase the leased equipment at the end of the lease term by making one more payment equal in amount to one of the prior sixty monthly lease payments. In *In re Clemmons*, 37 B.R. 712, 715 (Bankr. W.D.Mo.1984), the Bankruptcy Court for the Western District of Missouri determined that an option price was nominal where the value of the "leased property" at the end of the lease term far exceeded the option price. Here, the leased property sold for over $22,000 in December of 1987, almost four-fifths of the way through the sixty month lease term. ODP, had it made all its payments under the lease, would have been able to exercise its option and purchase the equipment in January of 1989 for $1173. It is unlikely that the equipment would decrease so much in value in the thirteen months between December, 1987 and January of 1989 that the lease's option price of $1173 would approximate the fair market value of the equipment at that time. This court finds that the option price was nominal and that the agreement between ODP and IFS therefore, was one for security.

Alternatively, this court finds that the provisions of Lease 83–252, specifically those:

1. disclaiming all warranties between IFS and ODP;

2. placing the costs of maintenance and repair of the leased equipment on ODP;

3. requiring ODP to pay any taxes levied upon the equipment;

4. requiring ODP to carry insurance on the equipment; and

5. placing the risks of loss and damage to the equipment on ODP;

demonstrate, under the standards expressed in *Parsons*, that Lease 83–252 creates a security interest subject to the provisions of Article Nine of the Uniform Commercial Code.

In Missouri, one who holds a security interest against a corporate debtor who has a place of business in only one county must file his or her financing statement in both the Secretary of State's office and with the Recorder of Deeds for the county where the debtor does business. Mo.Rev. Stat. § 400.9–401(1)(c) (Vernon 1965). Though ODP's only place of business was in Saint Louis County, IFS only filed a financing statement with the Secretary of State's office. Under the U.C.C. as adopted in Missouri, such filing did not perfect IFS's secured interest in the laminating equipment it purported to lease to ODP. Therefore, the IRS's properly perfected tax lien takes priority over IFS's (now Marinebanc's) unperfected security interest and those funds representing the sales proceeds of the laminating equipment held in escrow should be released to the IRS.

An Order consistent with this Memorandum Opinion will be entered this date.

### ORDER

For the reasons set forth in the Memorandum Opinion filed this date, it is

ORDERED that

1. Internal Revenue Service's Objection To The Disbursement To Marinebanc Leasing Company, Inc. From Escrow Of Proceeds From Sale Of Debtor's Assets is sustained;

2. Marinebanc Leasing has an unperfected security interest in the collateral in question (laminating equipment); and

3. the Trustee shall disburse $22,500.00 to the United States (Internal Revenue Service) as holder of a secured interest in the assets of the Debtor.