JOHNSON, Bankruptcy Judge,
dissenting.
The issue on appeal is whether a bankruptcy court should apply the trust laws of the forum state where the bankruptcy court sits and where the debtor elected to file his bankruptcy case (California) or, instead, the laws of another state (Hawaii) selected in a trust document by the benefactor of the debtor. In one sense, this issue is novel. Neither the appellant nor the appellee has cited any case directly on point and we could not find one either. No known case (federal, state or otherwise) addresses whether a court sitting in California should enforce Probate Code section 15306.5 against assets in a trust created by an instrument that invokes the trust law of another state or jurisdiction.
However, published cases throughout the country have considered the broader question of whether a court should apply the trust law of a forum state or the trust law of another state designated in a trust instrument. A review of those cases reveals a pattern in which the courts have generally declined to apply the trust law of a foreign jurisdiction selected by the set-tlor of a trust if doing so would harm creditors or other third parties. In other words, while some courts have applied the trust law of a foreign jurisdiction, they usually do not do so to the detriment of creditors or other third parties. When enforcing a judgment against assets of a trust, courts typically apply the judgment remedies of the forum state when those laws protect creditors more than the law of the other jurisdiction.
To avoid this result, the Debtor urges us to adopt a view of the Restatement (Second) of Conflict of Laws (“Restatement”) which applies to parties who consent to bilateral agreements. But that reasoning does not apply here. This is not a situation in which one party to a contract seeks to hold another party to the contract to a choice of law provision to which both parties agreed in the contract. To the contrary, the Debtor (who is not a party to the Zukerkorn trust agreement) seeks to enforce its terms against other parties (the trustee and creditors) who are also not parties to the agreement. Because the Restatement does not provide for this result, and should not be so interpreted, I respectfully dissent.
I. Cases When Courts Disregard Choice of Law Provisions in Trust Instruments
In general, courts typically refrain from applying the trust law of a foreign jurisdiction selected by the settlor of a trust if doing so would harm creditors or other third parties. In most instances, the judgment remedies of the forum state apply. For example, in Marine Midland Bank v. Portnoy (In re Portnoy), 201 B.R. 685 (Bankr.S.D.N.Y.1996), the debtor created a self-settled trust in the Jersey Channel Islands and transferred his assets into that trust. The debtor included in the trust instrument a provision that stated his creditors could not reach his assets. When the debtor filed a personal bankruptcy case in New York, one of his creditors asserted that the assets of the trust constituted assets of the bankruptcy es *198 tate. The debtor argued that (1) the trust instrument provided for the application of the law of Jersey Channel Islands (not New York) and (2) under the law of Jersey Channel Islands, creditors could not reach the trust assets. The bankruptcy court disagreed for two reasons.
First, the bankruptcy court (like many other courts) declined to allow a debtor to shield assets from creditors by creating a self-settled trust. Second, the bankruptcy court applied New York law for an additional reason: “In addition there is a second basis upon which to apply New York law—a choice of law provision ‘will not be regarded where it would operate to the detriment of strangers to the agreement, such as creditors or lienholders.’ ” Id. at 701 (citing cases). The court declined to enforce the choice of law provision in the trust agreement because doing so would harm “strangers to the agreement, such as creditors or lienholders.” Id.
Other courts have followed the reasoning in Portnoy and not allowed a debtor to shield assets from a creditor by relying upon a trust instrument that invokes a foreign jurisdiction. Instead, when application of local law would protect creditors more than a foreign jurisdiction, the courts have applied the local law of the forum state when interpreting a trust agreement and not the foreign law selected in the trust instrument. Goldberg v. Lawrence (In re Lawrence), 227 B.R. 907 (Bankr.S.D.Fla.1998) (Florida bankruptcy court followed Portnoy by applying Florida trust law and not the laws of a foreign jurisdiction selected in the trust instrument); Sattin v. Brooks (In re Brooks), 217 B.R. 98, 103 (Bankr.D.Conn.1998) (Connecticut bankruptcy court applied Connecticut trust law, not the law of a foreign jurisdiction designated in a trust agreement, because application of the foreign laws would harm creditors).
On appeal, the Debtor attempts to distinguish Portnoy and similar cases on the basis that these cases often involve fraud by the settlors in establishing the trusts. But the cases do not turn on this factual premise. To the contrary, the courts have been careful to state that the choice of law decision does not depend on whether or not fraud by the settlor'exists. Indeed, they often declare that it is “irrelevant” whether the settlor of the trust intended to defraud creditors or whether the settlor was solvent at the time. Portnoy, 201 B.R. at 685, 698 (Bankr.S.D.N.Y.1996) (stating that it is “irrelevant” whether or not the settlor of the trust intended to defraud anyone); Goldberg v. Lawrence (In re Lawrence), 227 B.R. 907, 917 (Bankr.S.D.Fla.1998) (noting that it is “irrelevant” whether or not the settlor of a trust intended to defraud anyone); In re Brooks, 217 B.R. 98, 103 (quoting the Restatement (Second of Trusts) and stating that is “not relevant” whether or not the settlor has any intention to defraud his creditors). Likewise, the Restatement states that the intent of the settlor of a trust is not relevant when evaluating whether a self-settled trust can defeat the claims of creditors. See 1 Restatement (Second) of Trusts § 156, Comment a. (“It is immaterial that the settlor-beneficiary had no intention to defraud his creditors”).
Regardless of the intent of the settlor, choice of law provisions in trust agreements are not enforced if the law of the forum state prohibits self-settled trusts. If a trust instrument states that the trust is governed by the law of a foreign jurisdiction, that choice of law is not honored if the beneficiary files a bankruptcy case in a different jurisdiction that prohibits self-settled trusts. As a matter of public policy, the laws of the forum state override the choice of law decision by the settlor. It is *199 against public policy to enforce a trust provision from a foreign jurisdiction that would impose this kind of harm upon creditors.
II. Cases When Courts Disregard Choice of Law Provisions in Other Contracts
On appeal, Herbert contends that his mother’s trust is not a self-settled trust and, of course, he is correct. But Portnoy, Lawrence, Brooks, Cameron and similar cases establish precedent against enforcing a choice of law provision in a trust instrument if doing so would harm creditors. A settlor of a trust cannot invoke the laws of a foreign jurisdiction to the detriment of creditors or other third parties who are not parties to the trust instrument.
The idea that a choice of law provision in an agreement is not enforced to the detriment of third parties appears in other areas of the law. For example, in Carlson v. Tandy Computer Leasing, 803 F.2d 391, 393-94 (8th Cir.1986), the debtor entered into a “lease” of certain computer equipment from Tandy pre-petition. After the debtor filed a bankruptcy case, the bankruptcy trustee sued Tandy arguing that the “lease” was actually a disguised installment sales contract and that Tandy should be treated as a seller of goods that retained an unperfected and avoidable security interest. Whether the contract was deemed a lease or an installment sales contract would determine whether Tandy could repossess the equipment or whether the bankruptcy trustee had priority over Tandy with respect to the equipment.
Tandy and the debtor agreed in the “lease” agreement that Texas law would apply but the debtor filed the bankruptcy case in Missouri. Acting pursuant to his strong-arm powers as a hypothetical lien-holder under section 544, the trustee contended that neither the trustee nor the creditors whose interests the trustee protected were bound by the choice of law provision in the “lease” agreement. The trustee argued for the application of Missouri law.
The bankruptcy court ruled in favor of the trustee. The Missouri bankruptcy court held that Missouri law applied and that under Missouri law, the “lease” should be treated as an installment sales contract. The district court reversed and held that the trustee was bound by the law selected by Tandy and the debtor in the “lease” agreement (Texas law) and that under Texas law, the agreement must be construed as a true lease. The Court of Appeals affirmed the decision of the district court but not its reasoning.
Instead, the Court of Appeals held that Missouri law applied. The Court of Appeals stated “[w]e conclude that because the dispute in question implicates the rights of third party creditors, Missouri law should be applied.” Tandy, 803 F.2d at 393. The Court of Appeals was not willing to enforce the choice of law provision in the agreement against a trustee or other parties who were not parties to the agreement. The Court stated that the “present case is unlike those situations where only the rights of parties privy to the initial choice of law agreement are implicated.... In those situations, no policy is furthered by refusing to allow the parties to select the law governing their rights alone.” Id. at 394. When the rights of third parties are implicated, however, the Court did not enforce the choice of law provision in an agreement against non-parties.
Likewise, a similar result occurred in In re Eagle Enterprises Inc., 223 B.R. 290 (Bankr.E.D.Pa.1998), affirmed, 237 B.R. 269 (E.D.Pa.1999). In Eagle, a German “lessor” purported to “lease” certain equipment to an American debtor. When the debtor filed a bankruptcy case in *200 Pennsylvania, the chapter 7 trustee asserted that the “lease” was really a disguised security interest under the UCC and not a true lease and, because the German company had not perfected its security interest, it had no interest of any kind in the equipment. The German company responded by arguing that the debtor agreed in the lease agreement that German law would govern and, under German law, the agreement was a true lease.
The trustee prevailed. The Court declined to follow German law and, instead, applied the Uniform Commercial Code and held the agreement was not a true lease. In declining to enforce the choice of law provision selected by the parties, the Court noted that many courts have held that a choice of law provision in a contract is not valid if it negatively affects the rights of third parties. It may govern the rights between the parties but if the rights of a third party are also affected, the choice of law provision is not binding.
Under normal circumstances, contracting parties are free to stipulate what state’s or nation’s law will govern their contractual rights and duties, provided that the state or nation has a reasonable relationship with the transaction, and the law chosen does not violate a fundamental public policy of the forum state.... Nonetheless, the parties’ stipulation will not be regarded where it would operate to the detriment of strangers to the agreement, such as creditors or lienholders....
See In re Eagle Enterprises, 223 B.R. at 295 (emphasis added) (quoting Hong Kong and Shanghai Banking Corp. v. HFH USA Corp., 805 F.Supp. 133, 139-40 (W.D.N.Y.1992)). A similar holding occurred in Ferrari v. Barclays Bus. Credit, Inc. (In re Morse Tool, Inc.), 108 B.R. 384 (Bankr.D.Mass.1989). In Ferrari, a bankruptcy trustee filed an action to avoid a security agreement as a fraudulent transfer. The parties to the agreement included a provision stating that Connecticut law would govern the agreement. The trustee attacked the agreement as a fraudulent transfer and the Massachusetts bankruptcy court decided whether it would apply Massachusetts law or Connecticut law. Following section 6 of the Restatement, the Court applied the law of the forum state (Massachusetts).
The Court refused to apply the choice of law provision in the agreement because the trustee (and the creditors of the debt- or) was not a party to the agreement and the law selected would be disadvantageous to them. The Court stated as follows:
And one of the parties to this suit—the Trustee, who stands in the shoes of the creditors—was not a party to the contract. The parties to a contractual conveyance cannot in their contract make a choice-of-law that binds creditors who allege that they were defrauded by the conveyance. The choice-of-law binds only parties to the contract, not the Trustee or the creditors.
Ferrari, 108 B.R. at 386.
The Court rejected the argument that, pursuant to section 187 of the Restatement, the choice of law provision selected by the parties to the agreement should control.
Section 187 of the Restatement states that, under certain circumstances, ‘the law of the state chosen by the parties to govern their contractual rights and duties will be applied.’ Restatement (Second), § 187(1) and (2) (emphasis added). This section, on which Barclays relies, plainly applies only to suits between parties to a contract regarding their rights and duties under the contract. And it applies only where the parties to the suit have chosen which *201 state’s law will govern. Neither of these circumstances applies here.
Id. Because the parties to the lawsuit were not parties to the contract, it would be inappropriate to enforce the choice of law provision.
.... the contract is not between the parties to the suit, but between two parties whom the plaintiff (a creditor or a bankruptcy trustee) alleges executed the contract for the very purpose of defrauding creditors. In view of this, it makes no sense to follow the choice-of-law clause in the agreement between Barclays and the Debtor. That would be tantamount to giving the defendant unilateral control over the choice-of-law, which clearly would violate the requirements of due process.
Id. at 387. Thus, cases such as Tandy, Eagle and Ferrari, decline to enforce a choice of law provision against individuals who are not parties to the agreement. That is true in this case. Herbert is not a party to the trust. Neither are his creditors nor the trustee. And Sally’s creditors are not parties to the trust instrument either.
Indeed, no one agreed to anything with Sally. She simply selected a choice of law that she preferred and now Herbert wants to use Sally’s choice as a sword (or shield) against Herbert’s creditors and the trustee. The California legislature will let her do so but only up to 75%. In that sense, this case presents a conflict between Sally and the California legislature. The latter should prevail.
III. Similar New York Statutes
As discussed above, courts have declined to enforce choice of law provisions in trust instruments or other agreements if doing so would harm creditors or other individuals who are not parties to the agreement. Instead, they apply the law of the forum state in order to protect creditors. Therefore, in California, bankruptcy courts should enforce section 15806.5 of the California Probate Code which permits creditors to reach up to 25% of the assets of a spendthrift trust even if the trust instrument asserts California law should not govern. Although there is no specific case directly on point reaching this conclusion, other courts have done so under similar facts.
For example, the laws of the state of New York governing spendthrift trusts are similar to California law. In New York, spendthrift trusts are not fully protected. Section 5205 of the New York Civil Practice Code governs enforcement of judgments against assets held in a trust in New York and the provisions of Section 5205 are similar to California law. Section 5205(c) provides a general exemption for assets held in a trust (like section 15301(a) of the California Probate Code) and section 5205(d) creates an exception to this protection (like section 15306.5 of the California Probate Code) that permits a creditor to attach between 10% to 100% of the income from a spendthrift trust. So, as in California, creditors may reach a portion of the income of a spendthrift trust (between 10% to 100%). Although the percentages are different,[1] both states allow *202 creditors to invade spendthrift trusts to some extent.
Given this statutory regime, New York courts have occasionally been called upon to address the issue that has arisen in the Zukerkorn case. Specifically, if a creditor in New York seeks to enforce a judgment against a New York debtor who is the beneficiary of a trust agreement, can the creditor seek to be paid from trust assets under section 5205 even if the trust agreement states it is governed by Connecticut law or any law other than New York. At least two New York cases have held that New York law applies.
For example, this issue was directly addressed in In the Matter of Wheat, 41 Misc.2d 723, 246 N.Y.S.2d 536 (1963). In that case, John Wheat failed to pay spousal support to his former wife. Mr. Wheat was the beneficiary of two trusts established by his deceased parents. His ex-wife sought to attach the income from the trusts in New York. The New York bank that acted as the trustee for the trusts opposed the enforcement of the judgment against the trust assets. The New York court overruled that opposition and allowed the creditor to attach 10% of the income of the trust.
The New York court noted it was “undisputed” that Mr. Wheat’s mother “was at the time of her death domiciled in Connecticut and that her will was admitted to probate in that State.” Id. at 538. The Court also noted that the trust instrument was “executed and delivered in the State of Connecticut” and specifically stated that “it shall be governed and construed in all respects according to the laws of the State of Connecticut”. Id. Although the New York court stated that generally “the laws of the State where the trust is established is ruled to be applicable”, the New York court declined to follow Connecticut law for attachment purposes. The Court cited section 5205 which would allow the creditor to recover 10% and stated as follows:
“The narrow question to be decided is whether the income from these two trusts is subject to attachment and, if so, to what extent. Though the trusts may in many respects be controlled by the law of Connecticut, so far as the right to attachment is concerned we are required to apply the law of New York. Attachment is a matter of remedy, and questions affecting it must therefore be ruled by the law of the forum.... ”
Wheat, 246 N.Y.S.2d at 539 (emphasis added). So while the Court indicated that Connecticut law would apply when construing the trust generally, it would not supplant New York law for attachment purposes. In other words, the choice of law provision by the settlor would not defeat the rights of creditors under section 5205 against a New York debtor in a New York court.
The United States District Court for the Southern District of New York reached a similar conclusion in a tax case entitled United States v. Pearson, 67-1 U.S. Tax Cas. (CCH) P9460, 1967 U.S. Dist. LEXIS 10762 (S.D.N.Y.1967). The Pearson case involved a complicated inter-creditor dispute in a case in which a debtor was a beneficiary of a spendthrift trust established in Connecticut. The debtor had voluntarily assigned his interest in the trust to a creditor to secure a $50,000 loan and the New York District Court enforced that assignment based on Connecticut law.
Specifically, the District Court held that Connecticut law should apply when considering the voluntary transfer of the interest in the trust because the settlor and his wife resided in Connecticut at the time of their death. Since Connecticut law (at the time) allowed the beneficiary of a spendthrift trust to anticipate and assign an interest in a trust (which is typically not *203 permitted in modern times) the creditor was able to enforce the assignment under Connecticut law even though New York law did not permit such assignments. In effect, the Court enforced the terms of the contract between the lender and ruled that, under Connecticut law, the assignment of an interest in a trust to secure a loan is enforceable.
However, another creditor (Annabelle Pearson) sought to levy on the assets of the trust in order to satisfy an unpaid debt. Ms. Pearson did not have a voluntary assignment from the debtor of any interest in the trust. Therefore, Ms. Pearson needed to rely upon New York attachment law. The New York District Court applied New York attachment law as to Ms. Pearson.
The Court held that under New York law, a provision in a spendthrift trust that prohibits creditors from reaching such assets is enforceable against the levying creditor.[2] However, pursuant to section 5205, the levying creditor could reach 10% of the income of the trust. The Court cited section 5205 as the available remedy and then quoted extensively from the decision in Wheat.[3] As to the levying creditor (Ms. Pearson), the Court fully applied New York law against a testamentary trust which the Court considered otherwise governable by Connecticut law. The Court held that the rights of the nonconsensual levying creditors should be governed by the attachment law of the forum state (New York). The Court stated:
“Although, as heretofore determined, the validity of the voluntary assignment by Pearson must be controlled by the law of Connecticut as a substantive matter, the attempt of Rathkopf and Annabelle Webb Pearson to reach Pearson’s income by judgment, attachment or suit, unlike that of Penn, must be determined as a procedural matter by the law of the State of New York.”
Pearson, 1967 U.S. Dist. LEXIS 10762 at *14. So, in both Wheat and Pearson, judgment creditors were able to invoke New York attachment law (section 5205) to invade spendthrift trusts otherwise governed by Connecticut law.[4]
IV. The Restatement
On appeal, Herbert wants the Court to apply section 187 of the Restatement to resolve this dispute. Section 187 provides that a forum state should apply the law chosen by the parties unless a “fundamental policy” of the forum state provides otherwise. The “fundamental policy” test is a high standard and it makes sense for the Restatement to impose this high standard when the parties before a court have voluntarily selected a particular choice of law in their agreement. Parties to contacts should be held to their agreements.
*204 But those facts do not apply to this case. Section 187(1) states that the “law of the state chosen by the parties to govern their contractual rights and duties will be applied ...” and section 187(2) states that the “law of the state chosen by the parties to govern their contractual rights and duties will be applied_” (emphasis added). None of the parties to the present appeal (not even Herbert) selected the law of Hawaii. That was the choice of Sally, not Herbert, the trustee or Herbert’s creditors. Therefore, section 187 simply does not apply on its face and, likewise, the “fundamental policy” test does not apply either.
Instead, the introductory note to chapter 10 of the Restatement pertains to trusts and it states:
The creation of a trust is a method by which the owner of property makes a disposition of it. The chief purpose in making decisions as to the applicable law is to carry out the intention of the creator of the trust in the disposal of the trust property. It is important that his intention, to the extent to which it can be ascertained, should not be defeated, unless this is required by the policy of a state which has such an interest in defeating his intention, as to the particular issue involved, that its local law should be applied....
Section 270(a) of the Restatement states that a trust is valid if valid
... under the local law of the state designated by the settlor to govern the validity of the trust, provided that this state has a substantial relation to the trust and that the application of its law does not violate a strong public policy of the state with which, as to the matter at issue, the trust has its most significant relationship....
Comment (b) to § 270 of the Restatement states:
Law designated by the settlor to govern validity of the trust. Effect will be given to a provision in the trust instrument that the validity of the trust shall be governed by the local law of a particular state, provided that this state has a substantial relation to the trust and that the application of its local law does not violate a strong public policy of the state with which as to the matter at issue the trust has its most significant relationship.
Section 270(a) of the Restatement has two prongs: “the substantial relation” prong and the “strong public policy” prong. Therefore, under section 270(a), Hawaii law would apply if Hawaii “has a substantial relation to the trust and that the application of its law does not violate a strong public policy of [California].”
A. The Trust Does Not Currently Have A Substantial Relationship To The State of Hawaii.
With respect to the former, Herbert argues that Hawaii has a “substantial relation to the trust”. This was certainly true when Sally, Herbert and Jack were all alive and lived in Hawaii. However, as with many things in life, events changed.
Herbert has outlived Sally and Jack. Both died nearly three decades ago. The record indicates that Herbert is the only remaining primary beneficiary as Jack has died and Herbert’s children have received his portion of the inheritance from Sally. Real property assets in Hawaii were sold and converted to cash a decade ago. Herbert controls millions of dollars in trust assets as trustee and is the beneficiary of the assets of the trust. The interests of the trust and Herbert are closely aligned. This is Herbert’s trust (at least in practical terms).
Therefore, when Herbert elected to move to California, the relationship be *205 tween the trust and the state of Hawaii diminished. It no longer makes sense to state that Hawaii currently has a “substantial” relationship with the trust. A relationship may still exist between the trust and Hawaii but it is no longer substantial.
B. California Probate Code Section 15306.5 Reflects A Strong Public Policy Under California Law.
But even if the Court accepted Herbert’s argument that the trust he now controls in California still has a “substantial” relationship with Hawaii, the second prong of section 270(a) provides the most significant problem for Herbert. Applying Hawaii law would run afoul of a strong public policy embodied in California Probate Code section 15306.5.
As discussed above, choice of law provisions in trust instruments are not enforced in certain circumstances (i.e. with respect to self-settled trusts). The Courts agree that a “strong public policy” exists against self-settled trusts. On appeal, the Trustee argues that California has other important policies that support the application of California law instead of Hawaii law.
Specifically, the Trustee argues on appeal that section 15306.5 promotes equality between debtors in California. Under California law, individuals who work for a living and generate wages are subject to wage garnishment. Creditors may attach up to 25% of earned wages.
But the system of wage garnishment does not affect individuals who enjoy so much wealth that they need not work because they are the beneficiaries of spendthrift trusts established by wealthy parents or other benefactors. The garnishment procedure does not apply to income from trusts. Instead, the California legislature enacted Section 15306.5 to promote equality. Section 15306.5 (in concert with the wage garnishment laws) insures that debtors who receive income from a wealthy trust do not receive more protection from their creditors than people who must work and rely upon wages for income. This equal treatment seems reasonable and rational and reflects a sensible strong policy judgment by the California legislature.
Applying section 15306.5 is also consistent with those cases that do not enforce self-settled trusts. For example, Herbert does not dispute that Sally could not have shielded any of her assets from her own creditors. Neither Hawaii nor California law allowed her to do that. Instead, Sally wanted to provide a multi-million dollar gift to her sons (and grandchildren) and prevent their creditors from reaching those assets. The California legislature allows this type of transfer but not 100%. Creditors can reach up to 25% of those funds just like they can reach 25% of earned wages. There does not appear to be any reason to treat the multi-million dollar gift from Sally to Herbert any differently than the wages earned from an employer. ■
This issue is magnified when thinking about ordinary Californians who live from paycheck to paycheck. Most of those paychecks are subject to wage garnishment of up to 25%. Therefore, section 15306.5 promotes equality among debtors whether they are rich or poor debtors. Treating similarly situated individuals equally constitutes a “strong” public policy which satisfies the requirements of section 270(a) of the Restatement.
The attachment laws in New York also support this view. As in California, New York treats wage garnishment and trusts the same. Under section 5205 of the New York Civil Practice Code, a creditor can reach wages and trust income to the same extent. Section 5205 treats these sources of income in the same manner and section *206 5205 is enforced even if a trust instrument seeks application of the laws of another jurisdiction. Section 15306.5 of the California Probate Code should be applied in the same manner. Section 15306.5 is entitled to the same respect as section 5205.
Also, a failure to apply Section 15306.5 would result in the inconsistent application of the law. Indeed, it would give Herbert the protection of the laws of two states in a manner that neither state contemplated. In effect, Herbert would enjoy the benefits of a new enhanced hybrid legal system.
Hawaii law protects assets in trusts more extensively than California law. On the other hand, California law contains very generous exemptions that are considerably better than Hawaiian exemptions.[5] Each state has created a combination of laws that protects the assets of debtors according to different criteria. The legislatures of each state have reached different conclusions regarding which kind of assets should be protected and to what degree.
Herbert wants the best of both worlds. Herbert wants the benefit of Hawaii’s more generous trust laws and California’s more generous exemption laws. But doing so would not be consistent with the system of laws enacted in either state.
California allows more generous exemptions but is more restrictive in its trust laws. Hawaii has less generous exemptions but has more protective trust laws. Each legislature is best suited to look at the larger picture (in each state) and make appropriate adjustments unique to the needs of both states. A decision in favor of Herbert would give him the best of both worlds simply because he moved from Hawaii to California. Herbert would not have this advantage had he remained in Hawaii.
In that sense, Herbert seeks the benefits of his decision to move to California but not its burdens. Herbert wants the benefits of moving to California (enhanced exemption law) but not its burdens (reduced protection for trusts). But that would elevate Herbert to a status above most citizens of California (who do not benefit from Hawaii trust law) and most citizens of Hawaii (who cannot invoke California exemption laws). When contemplating a choice of law question, the better decision is to apply the law in such a manner that treats people equally to the greatest extent possible. This result not only promotes equality but also personal responsibility.
V. CONCLUSION
Accordingly, for the reasons stated, I respectfully dissent. Pursuant to section 270(a) of the Restatement, California law should apply, not Hawaii law.

. California Probate Code section 15306.5 permits creditors to 25% of the assets of a trust. The statute a range of between 0% to 25%. There is no minimum amount that creditors receive and a maximum of 25% exists.
In New York, creditors are entitled to a minimum of 10% of the income of a spendthrift trust and the court has the power to increase this 10% amount (theoretically) up to 100% to the extent (if any) that the trust assets are not necessary for the “reasonable requirements of the judgment debtor and his dependents....” See N.Y. CPLR § 5205(d).

. Pearson, 1967 U.S. Dist. LEXIS 10762 at *13 (“When New York law is applicable, by reason of Section 15 of the Personal Property Law as it existed during the prior proceedings herein and as it now exists, the right of Pearson to receive income under the testamentary trust cannot be transferred by assignment or otherwise.”).

. Pearson, 1967 U.S. Dist. LEXIS 10762 at *14-*17.

. The Pearson decision was clearly not what Annabelle Pearson hoped for. She apparently wanted the trust interpreted according to Connecticut law because New York law enforces anti-alienation clauses in trust agreements. In that regard, applying New York law harmed Ms. Pearson, the levying creditor, because her claim was not paid in full. But the Court still permitted her to invoke section 5205 and reach the assets of the trust “subject to whatever statutory limitations may be imposed under the laws of the State of New York.” Pearson, 1967 U.S. Dist. LEXIS 10762 at *23.

. For example, the maximum homestead exemption in Hawaii is only $30,000 but the maximum in California is $175,000. Compare Hawaii Revised Statutes section 651-92(a)(1) and California Code of Civil Procedure section 704.730(a)(3). Likewise, the personal property exemptions in California appear to be considerably more generous than in Hawaii. Compare Hawaii Revised Statutes section 651-121 with California Code of Civil Procedure sections 704.010-704.210.