FILED

DEC 19 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No. NC-11-1506-JuKiJo |
| | ) | |
| HERBERT M. ZUKERKORN; JENNIFER ZUKERKORN, | ) | Bk. No. 10-13626 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| _____ | ) | |
| LINDA S. GREEN, Chapter 7 Trustee, | ) | |
| | ) | |
| Appellant, | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| HERBERT M. ZUKERKORN; JENNIFER ZUKERKORN, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on May 17, 2012
at San Francisco, California

Filed - December 19, 2012

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Alan Jaroslovsky, Bankruptcy Judge, Presiding

_____

Appearances:     John H. MacConaghy, Esq., MacConaghy & Barnier, PLC, argued for appellant Linda S. Green, Chapter 7 Trustee;  Daniel Sturm, Esq. argued for appellees Herbert M. Zukerkorn and Jennifer K. Zukerkorn.

_____

Before:  JURY, KIRSCHER, and JOHNSON[*], Bankruptcy Judges.

Opinion by Judge Jury
Dissent by Judge Johnson

_____

    [*]  Hon. Wayne E. Johnson, Bankruptcy Judge for the Central District of California, sitting by designation.

JURY, Bankruptcy Judge:

Chapter 7[1] trustee, Linda S. Green (the "Trustee"), moved to compel turnover of all or some of the income distributed to debtor, Herbert M. Zukerkorn ("Herbert"), under a spendthrift trust. The Trustee's motion and amended motion raised issues regarding (1) the enforceability of the trust's choice of law clause which designated Hawaii as the governing law; (2) the validity of the trust's spendthrift clause; and (3) whether the postpetition income distributions to Herbert became property of the estate under § 541(a)(5)(A). The bankruptcy court denied the Trustee's motion in its entirety, the Trustee appealed, and we AFFIRM.

## I. FACTS

The facts established by the record in this case are undisputed. In 1978, Herbert's mother, Sally Zukerkorn ("Sally"), established the Revocable Trust of Sally Zukerkorn (hereinafter, the "Sally Zukerkorn Trust") after Herbert's father passed away. Sally was the settlor ("grantor"), individual trustee, and beneficiary of this trust during her lifetime. American Trust Co. of Hawaii, Inc. was named as the corporate trustee. The trust was fully revocable and provided that Sally could use all income and whatever portion of the principal she deemed fit for whatever purposes she believed ". . . to be for Grantor's best interest."

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

The trust contained the following spendthrift clause:

> No interest under this instrument shall be transferable or assignable by any beneficiary, or be subject during said beneficiary's life to the claims of said beneficiary's creditors. This paragraph shall not restrict the exercise of any power of appointment.

The trust also contained a choice of law clause:

> This instrument and the dispositions under it shall be construed and regulated and their validity and effect shall be determined by the law of Hawaii.

On October 15, 1982, Sally amended the trust. The amended trust provided that on her death the corpus was split into two separate trusts for her sons Herbert and Jack. Herbert was named as the successor trustee and lifetime beneficiary for his trust. Herbert's children, Jon and Sara, were granted a contingent remainder interest in Herbert's trust. Herbert's brother Jack was named as the successor trustee and lifetime beneficiary of the second trust. Herbert was named as the successor trustee of this trust upon Jack's death. Herbert's children, Jon and Sara, were likewise named the contingent beneficiaries of Jack's trust.

Sally died in 1984. Jack died in 1986. Herbert became the trustee of both trusts. In 2003, Herbert, acting as trustee, sold Sally's real property for $5.8 million. He netted $4 million and placed half into Jack's trust and half into his own trust. Jack's trust terminated when Herbert's children reached the age of 45. Herbert remains the trustee and the life beneficiary of the Sally Zukerkorn Trust up through the present time.

### The Bankruptcy

On September 20, 2010, Herbert and Jennifer Zukerkorn

(collectively, "Debtors") filed their chapter 7 petition. Green was appointed the Trustee.

Debtors' Schedule B identified Herbert's life income interest only in the trust and noted that the trust had a spendthrift provision valid under Hawaii law, which governed the instrument. Debtors valued Herbert's interest at "0.00" and did not claim this interest as exempt. Debtors' Schedule I showed income of $12,224 per month, $7,160 of which was from the trust and related income.[2] Debtors' Schedule F showed that they owed $162,062 in unsecured debt, consisting mostly of credit card debt.

On December 3, 2010, the Trustee filed a motion to compel turnover of twenty-five percent of the distributions paid to Herbert pursuant to the trust, contending that portion was property of the estate under Cal. Prob. Code § 15306.5.[3] The

_____

[2] Herbert paid himself a $986 monthly fee for his duties as spendthrift trustee for himself. Herbert also received $4,841 per month in beneficiary income distributions.

[3] Cal. Prob. Code § 15306.5 provides in relevant part:

(a) Notwithstanding a restraint on transfer of the beneficiary's interest in the trust under Section 15300 or 15301, and subject to the limitations of this section, upon a judgment creditor's petition under Section 709.010 of the Code of Civil Procedure, the court may make an order directing the trustee to satisfy all or part of the judgment out of the payments to which the beneficiary is entitled under the trust instrument or that the trustee, in the exercise of the trustee's discretion, has determined or determines in the future to pay to the beneficiary.

(b) An order under this section may not require that the trustee pay in satisfaction of the judgment an

(continued...)

-4-

Trustee argued that California law, rather than Hawaii law, should apply to the Sally Zukerkorn Trust because (1) California had the more substantial relation to the dispute and (2) enforcing the spendthrift provision under Hawaii law would violate the fundamental policies of California.

On April 29, 2011, the Trustee filed an amended motion, seeking turnover of the entire principal and all income from the trust, arguing that the spendthrift clause was unenforceable because Herbert was both the trustee and beneficiary of the trust. Alternatively, the Trustee sought Herbert's postpetition income distributions from the trust, contending they were property of the estate under § 541(a)(5)(A).[4]

The bankruptcy court considered the Trustee's motion and amended motion in two phases. First, it concluded on cross motions for summary judgment that the trust was governed by Sally's choice of Hawaii law. Second, after an evidentiary hearing held on August 11, 2011, the bankruptcy court concluded that none of the principal or interest paid or payable to Herbert under the trust was property of the estate since the

---

[3](...continued)
amount exceeding 25 percent of the payment that otherwise would be made to, or for the benefit of, the beneficiary. . . .

[4] Section 541(a)(5)(A) provides that the estate includes:

Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date —

(A) by bequest, devise, or inheritance; . . . .

spendthrift provisions were fully enforceable under Hawaii law.[5] The court further found that § 541(a)(5)(A) was inapplicable to the Sally Zukerkorn Trust because it was an inter vivos trust as opposed to a testamentary trust. Thus, Herbert's postpetition income distributions were not property of the estate. On September 2, 2011, the bankruptcy court entered its order denying the Trustee's motion to compel turnover of property of the estate. The Trustee timely appealed.

## II.  JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(E). We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUES

A.    Did the bankruptcy court err by deciding that Hawaii law rather than California law should govern the Sally Zukerkorn Trust?

B.    Did the bankruptcy court err in concluding that the postpetition income distributions from the Sally Zukerkorn Trust

---

[5] At issue in the evidentiary hearing was whether the spendthrift trust was enforceable under Hawaii law when Herbert was both the beneficiary and dominant spendthrift trustee. The issue which generated the evidentiary hearing has not been briefed by the Trustee in this appeal and therefore has been waived. Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999). In the Memorandum on Motion for Turnover, the bankruptcy court upheld the spendthrift provision finding that Herbert did not have full control over the trust assets and that the whole purpose of the trust was to keep Herbert from exercising unfettered control equivalent to ownership. The court further found that under Hawaii law, Herbert's interest was protected from the claims of creditors incurred for the necessities of life and taxes.

-6-

to Herbert were excluded from property of the estate?[6]

## IV.  STANDARD OF REVIEW

We review de novo the bankruptcy court's decisions on summary judgment, choice of law questions, statutory interpretation and whether property is property of the estate. Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1221-22 (9th Cir. 2010) (summary judgment); Mazza v. Am. Honda Mtr. Co., 666 F.3d 581, 589 (9th Cir. 2012) (choice of law); Simpson v. Burkart (In re Simpson), 557 F.3d 1010, 1014 (9th Cir. 2009) (statutory interpretation); White v. Brown (In re White), 389 B.R. 693, 698 (9th Cir. BAP 2008) (property of the estate).

## V.  DISCUSSION

The trustee is charged with the duty of collecting and reducing to money the property of the estate.  § 704(a). Property of the bankruptcy estate is property in which the debtor has a "legal or equitable interest as of the commencement of the case."  § 541(a)(1).  Section 541(c)(2) excludes from the property of the estate any property that is held in trust and subject to a restriction on transfer under applicable nonbankruptcy law.  An anti-alienation provision in a valid

---

[6]  The Trustee listed two additional issues on appeal in her Designation of Record and Statement of Issues on Appeal: (1) Did the Bankruptcy Court err in concluding that the Debtor's entire interest in the principal and income of a spendthrift trust was not property of the estate where the Debtor exercised discretionary control over the Trust as both trustee and beneficiary? and (2) Did the Bankruptcy Court err in concluding that the Debtor's entire interest in the principal and income of a spendthrift trust was not property of the estate where the Debtor owed substantial claims to creditors for the necessities of life?  These issues were not discussed on appeal and therefore have been waived.  Smith, 194 F.3d at 1052.

spendthrift trust created under state law is an enforceable restriction on the transfer of a beneficial interest of the debtor. Patterson v. Shumate, 504 U.S. 753, 758 (1992).

The bankruptcy court found that the Sally Zukerkorn Trust was a valid spendthrift trust and that ruling has not been appealed. The Trustee's main complaint on appeal is that the bankruptcy court erred in upholding Sally's choice of Hawaii law when Herbert was domiciled in California and filed bankruptcy there. Based on these facts, the trustee argues that California law should apply.

Hawaii recognizes spendthrift trusts, see Welsh v. Campbell, 41 Haw. 106 (Haw. 1955) and Haw. Rev. Stat. § 554G-5(d),[7] as does California, see Canfield v. Sec. First Nat. Bank, 87 P.2d 830 (Cal. 1939) and Cal. Prob. Code, §§ 15300, 15301. However, California limits the scope of the spendthrift protection under Cal. Prob. Code § 15306.5. That statute provides that a judgment creditor may obtain an "order directing the trustee to satisfy all or part of the judgment out of the payment to which the beneficiary is entitled under the [spendthrift] trust instrument, . . ." as long as the payment does not exceed twenty-five percent of the funds otherwise available to the beneficiary.[8] Because a bankruptcy trustee

_____

[7] In addition, Hawaii law provides that a restriction on transfers in a Hawaii trust instrument is a restriction "that is enforceable under applicable nonbankruptcy law within the meaning of § 541(c)(2) of the Bankruptcy Code." Haw. Rev. Stat. § 554G-5(d).

[8] Even then, this rule is subject to further qualification. California law imposes a significant limitation on a creditor's
(continued...)

enjoys the powers of a hypothetical judgment creditor under § 544(a)(1), the Ninth Circuit has held that the trustee can seek an order under Cal. Prob. Code § 15306.5 to obtain twenty-five percent of a valid spendthrift trust. Neuton v. Danning (In re Neuton), 922 F.2d 1379 (9th Cir. 1990). Due to the differences in Hawaii and California law, the parties do not dispute that there is a genuine conflict in the laws of the two states. We thus look to choice of law rules for guidance.

Federal courts in the Ninth Circuit and California state courts both look to the Restatement (Second) of Conflicts of Law (1971) (the "Restatement") for the choice of law rules. See Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.), 277 F.3d 1057, 1069 (9th Cir. 2002); Mandalay Resort Grp. v. Miller (In re Miller), 292 B.R. 409, 413 (9th Cir. BAP 2003); see also Nedlloyd Lines B.V. v. Super. Ct., 834 P.2d 1148, 1151 (Cal. 1992)(California courts apply the principles set forth in the Restatement Second of Conflict of Laws). Although § 6 of the Restatement sets forth general factors for consideration in a choice of law analysis,[9] the

_____

[8](...continued)
right to reach payments made to a beneficiary of a spendthrift trust. Cal. Prob. Code § 15306.5(c) exempts from payments to which a creditor would be entitled under Cal. Prob. Code § 15306.5 "any amount that the court determines is necessary for the support of the beneficiary and all the persons the beneficiary is required to support."

[9] The general factors relevant to a choice of law analysis are: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the
(continued...)

Restatement also points to specific factors related to the issue at hand. Here, the validity and enforceability of the choice of law clause in Sally's trust implicates both contract choice of law rules and those applicable to trusts.[10]

Section 187 of the Restatement relates to contracts and provides:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

---

[9] (...continued) protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. These factors are not exclusive and "[v]arying weight will be given to a particular factor, or to a group of factors, in different areas of choice of law." Restatement § 6 cmt. c.

[10] It has been said that trust law lies between, but also overlaps, with contract law and property law. See Thomas P. Gallanis, The New Direction of Am. Trust Law, 97 Iowa L.Rev. 215, 234 (2011). Those who view trust law as closer to contract law see a trust as a contract between the settlor and the trustee, with the trust's beneficiaries being "akin to contractual third-party beneficiaries." Id. at 235. Those who view trust law as closer to property law, view a trust as "a property arrangement arising from a conveyance or devise, not a contract." Id. Under either view, the choice of law rules for contracts and trusts set forth in the Restatement contain factors that are substantially similar for purposes of our analysis.

(b) application of the law of the chosen state would be contrary to a <u>fundamental</u> policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Comment g of §6 states:

<u>Protection of justified expectations</u>. This is an important value in all fields of the law, including choice of law. Generally speaking, it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state. Also, it is in part because of this factor that the parties are free within broad limits to choose the law to govern the validity of their contract (see § 187) and that the courts seek to apply a law that will sustain the validity of a trust of movables (see §§ 269-270).

In applying § 187 of the Restatement, the California Supreme Court in <u>Nedlloyd Lines</u>, 834 P.2d at 1158, explained:

[T]he proper approach under Restatement section 187, subdivision (2) is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a <u>fundamental</u> conflict with California law, the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue. . . .' If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.

Choice of law rules pertaining to trusts also inform our analysis. Similar to the contractual area, choice of law

-11-

principles generally respect a designation in a trust which provides that certain law be applied to interpret it. In its introductory note, Chapter 10 of the Restatement pertaining to trusts states:

> The creation of a trust is a method by which the owner of property makes a disposition of it. The chief purpose in making decisions as to the applicable law is to carry out the intention of the creator of the trust in the disposal of the trust property. It is important that his intention, to the extent to which it can be ascertained, should not be defeated, unless this is required by the policy of a state which has such an interest in defeating his intention, as to the particular issue involved, that its local law should be applied. . .

Section 268(1) of the Restatement provides: "A will or other instrument creating a trust of interests in movables is construed in accordance with the rules of construction of the state designated for this purpose in the instrument." Comment (b) of this section states:

> When law designated by the settlor or testator to govern construction[,] [t]he courts will give effect to a provision in a trust instrument . . . that it should be construed in accordance with the rules of construction of a particular state. It is not necessary that this state have any connection with the trust. This is because construction is a process for giving meaning to an instrument in areas where the intentions of the party, or parties, would have been followed if they had been made clear. (emphasis added)

Finally, as to the trust's validity, § 270(a) of the Restatement states that an inter vivos trust is valid if valid

> [U]nder the local law of the state designated by the settlor to govern the validity of the trust, provided that this state has a substantial relation to the trust and that the application of its law does not violate a strong public policy of the state with which, as to the matter at issue, the trust has its most significant relationship . . . .

Comment (b) to § 270 of the Restatement states:

-12-

> *Law designated by the settlor to govern validity of the trust*. Effect will be given to a provision in the trust instrument that the validity of the trust shall be governed by the local law of a particular state, provided that this state has a substantial relation to the trust and that the application of its local law does not violate a strong public policy of the state with which as to the matter at issue the trust has its most significant relationship.
>
> A state has a substantial relation to a trust when it is the state, if any, which the settlor designated as that in which the trust is to be administered, or that of the place of business or domicile of the trustee at the time of the creation of the trust, or that of the location of the trust assets at that time, or that of the domicile of the settlor, at that time, or that of the domicile of the beneficiaries. There may be other contacts or groupings of contacts which will likewise suffice.

## Analysis

On appeal, the Trustee does not contend there was a genuine issue of material fact that prevented entry of summary judgment for Herbert on the choice of law question. Instead, the Trustee argues that on the undisputed facts before us, the bankruptcy court erred as a matter of law in concluding that Hawaii law applied.

First, the Trustee maintains that the strong public policy of California embodied in Cal. Prob. Code § 15306.5 demonstrates that California had a materially greater interest in the spendthrift trust than Hawaii. According to the Trustee, Cal. Prob. Code § 15306.5 reflects the California legislature's intent that "trust-fund babies" should get no better treatment than wage earners when it comes to judgment creditors.[11] Thus, the Trustee argues, the legislature enacted Cal. Prob. Code

---

[11] We could locate no reference to trust-fund babies in connection with the statute.

-13-

§ 15306.5 to correspond to the wage garnishment statute which subjects wage earners to a levy on twenty-five percent of their monthly income.

Second, the Trustee contends that the court erred by giving some factors under the Restatement little weight. In this regard, the Trustee contends that California is not only the forum of the dispute, but also the forum that Debtors themselves chose. The Trustee further asserts that California has the most substantial relation to the trust, because Herbert - both as trustee and as one of the trust's primary beneficiaries - is and has been a California resident and seeks to retain his exempt assets pursuant to California's exemption scheme. We address each of the Trustee's arguments in turn.

As can be seen by the rules stated above, choice of law questions involve a multi-step analysis in which a variety of factors are considered. We start from the premise that the Restatement reflects a strong policy favoring enforcement of choice of law provisions. In the contract area this policy protects the justified expectations of the parties and in the trust area this policy carries out the intention of the creator of the trust which is given great import. In addition, choice of law provisions are usually respected by California courts in the area of both contracts and trusts. See Nedlloyd Lines, 834 P.2d at 1151; Cal. Prob. Code § 21103.[12] We thus examine whether

---

[12] Cal. Prob. Code § 21103 provides:

The meaning and legal effect of a disposition in an instrument is determined by the local law of a

(continued...)

-14-

any exception to the general rule of upholding a party's choice of law is warranted under these circumstances.[13]

Under the Restatement, Sally's choice of Hawaii law should be upheld if Hawaii has a substantial relation to her trust. Restatement § 187(2)(a); § 270(a). Comment b of § 270 of the Restatement provides that a state has a substantial relation to a trust if at the time the trust is created: (1) the trustee or settlor is domiciled in the state; (2) the assets are located in the state; and (3) the beneficiaries are domiciled in the state. These contacts with the state are not exclusive.

Applying these contacts, there is little question that the State of Hawaii has a substantial relation to the Sally Zukerkorn Trust. At the time Sally created the trust in 1978, approximately 34 years ago, the trustee and settlor (Sally) was domiciled in Hawaii, her assets were located in Hawaii, and Herbert, one of the beneficiaries, was domiciled in Hawaii and remained a citizen of Hawaii for over 70 years. Furthermore, the trust is administered by a Hawaii corporate trustee. These

---

[12](...continued)
particular state selected by the transferor in the instrument unless the application of that law is contrary to the rights of the surviving spouse to community and quasi-community property, to any other public policy of this state applicable to the disposition . . . .

[13] The dissent departs from our analysis in one sharp respect which leads to its different conclusion: rather than give weight to the expectations of Sally as creator of the trust when she chose Hawaiian law to govern the execution of her wishes, the dissent ignores Sally altogether and focuses instead on Herbert and his creditors as the only relevant parties. We believe this vision ignores the principles of the Restatement and leads to the incorrect result.

-15-

same contacts — and there is nothing in the record to the contrary — demonstrate that Sally had a reasonable basis for her choice of Hawaii law to govern her trust. Because Hawaii has a substantial relationship to the parties and a reasonable basis otherwise exists for the choice of law, Sally's choice will be enforced unless the Trustee can establish (1) that the chosen law is contrary to a fundamental policy of California and (2) that California has a materially greater interest in the determination of the particular issue. Wash. Mut. Bank FA v. Sup. Ct., 15 P.3d 1071, 1079 (Cal. 2001).

There is no bright-line definition of a "fundamental policy." Restatement § 187 comment g. A fundamental policy must be "substantial," and "may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power." Id. "California's narrow, public policy exception to the resolution of conflicts through a neutral comparison of government interests . . . applies only when foreign law is so offensive to [California] public policy as to be 'prejudicial to . . . recognized standards of morality and to the general interest of the citizens. . . .'" McGhee v. Arabian Am. Oil Co., 871 F.2d 1412, 1423 n. 8 (9th Cir. 1989) (quoting Wong v. Tenneco, Inc., 702 P.2d 570, 576 (1985)). Under these standards, we understand the public policy exception in choice of law analysis to require something more than the law of the other state be different from the law of California.

Here, the Trustee simply points to Cal. Prob. Code § 15306.5 as if it were a statutory declaration that California

public policy would be offended by enforcing the choice of law clause in Sally's trust. The Trustee has not identified any recognized standard of morality in California that is impacted by the application of Hawaii law in this case nor does she explain how upholding a Hawaii choice of law clause in an otherwise valid spendthrift trust adversely affects the "general interests of Californians." Although self-settled trusts are void and against public policy in California, as found by the bankruptcy court here and not challenged on appeal, the Sally Zukerkorn Trust is not a self-settled trust.[14] Without more, there is inadequate authority for us to find that Cal. Prob. Code § 15306.5, standing alone, is a fundamental policy of California.

Even if we were to find that California has such a fundamental policy, pursuant to the Restatement (Second) of Conflict of Laws § 187(2)(b), the Trustee still has to show that California has a materially greater interest than Hawaii in the determination of the particular issue. The relative weight of material interest in the determination of an issue requires the

---

[14] California law voids self-settled trusts to prevent individuals from placing their property beyond the reach of their creditors. Nelson v. Cal. Trust Co., 202 P.2d 1021 (Cal.1949). The Nelson court explained the rationale for the rule:

It is against public policy to permit a man to tie up his property in such a way that he can enjoy it but prevent his creditors from reaching it, and where the settlor makes himself a beneficiary of a trust any restraints in the instrument on the involuntary alienation of his interest are invalid and ineffective.

Id. at 1021.

-17-

court to weigh a number of factors, including where the contract was made, the state where a party to the contract is domiciled, where the events that are the subject of the case transpired, the origin of the laws that plaintiffs seek to invoke, the public policy expressed by those laws, the number of contacts a state has with the subject matter of a case, and the nature of the state's interest in the case. <u>Klussman v. Cross Country Bank</u>, 134 Cal.App.4th 1283, 1299 (Cal. Ct. App. 2005).

The Trustee argues that California has a materially greater interest than Hawaii because (1) Herbert is now domiciled in California;[15] (2) the chapter 7 petition was filed in California; and (3) some of Debtors' scheduled unsecured creditors are located in California.

At first blush, the Trustee's argument has appeal. Upon the filing of their bankruptcy, debtors obtained the benefit of California exemption laws based on the fact that California was their domicile. These laws allow Debtors to shield certain assets from execution by their creditors. Therefore, it could be said that California has some interest in the choice of law determination at issue in this case because Debtors have taken advantage of its laws that regulate debtor-creditor relationships. However, as noted above, a number of essential elements demonstrate that Hawaii had the more substantial relation to the trust and that the State of California had no relationship with the Sally Zukerkorn Trust other than the fact

---

[15] Herbert Zukerkorn's children who are the remainder beneficiaries of the Zukerkorn Trust are not residents of California. The Trustee has not pointed to any authority that eliminates from consideration secondary beneficiaries.

that Herbert, one of the beneficiaries, lived in California. Therefore, on balance, we cannot say that under these circumstances California has a "materially greater" interest than Hawaii in the determination of the choice of law issue.

Finally, we are not persuaded by case law the Trustee cites in support of her position. In <u>Marine Midland Bank v. Portnoy (In re Portnoy)</u>, 201 B.R. 685 (Bankr. S.D.N.Y. 1996), Larry Portnoy transferred all of his personal property to an offshore trust at a time he knew that his guarantee to a New York bank of the debts of his New York company would soon be called. Portnoy was both the settlor and beneficiary of the offshore trust. After he filed his chapter 7 petition, the creditor that held his guaranty sought to deny his discharge alleging, among other things, that Portnoy had transferred his assets to an offshore trust in Jersey, but remained de facto owner by continuing to maintain unlimited control over the assets and conceal the trust.

In deciding whether debtor had control over the assets of the trust, the court first had to decide whether the law of New York or Jersey law, which was the trust's choice of law, supplied the substantive rules. The court found:

> That Portnoy settled the trust in Jersey, designated the trust to be administered in Jersey, and appointed a Jersey resident as trustee, gives Jersey an undeniable relationship to the trust. On the other hand, Portnoy, who is both the settlor and primary beneficiary, Portnoy's creditors, and the other beneficiaries are all United States domiciliaries. Portnoy's creditors have no contacts with Jersey, and Portnoy had the greatest contact with the United States at the time he settled the trust and reasonably could have believed that United States law would be applicable . . . . On balance, I conclude that New York has the weightier concern in determining whether

-19-

or not whatever rights Portnoy retained after he formed the trust could be considered to constitute a property interest such that that interest should have been disclosed in his bankruptcy schedules. The trust, the beneficiaries, and the ramifications of Portnoy's assets being transferred into trust have their most significant impact in the United States. In addition, I believe that application of Jersey's substantive law would offend strong New York and federal bankruptcy policies if it were applied . . . .

Id. at 698.

In discussing New York's policies, the court observed that under New York law, "'when a person creates for his own benefit a discretionary trust, his creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit, even though the trustee in the exercise of his discretion wished to pay nothing to the beneficiary or to his creditors, and even though the beneficiary could not compel the trustee to pay him anything . . . .'" Id. In contrast to New York's policies, the bankruptcy court found that Jersey's interest in the trust was perhaps to only "augment business." Id. at 700. In the end, the court stated: "I think it probably goes without saying that it would offend our policies to permit a debtor to shield from creditors all of his assets because ownership is technically held in a self-settled trust, where the settlor/beneficiary nonetheless retains control over the assets and may effectively direct disposition of those assets." Id. Based on New York's "deeply rooted" policies, the court found that New York law applied.

The court also found a second basis for applying New York law. According to the court, a choice of law "will not be regarded where it would operate to the detriment of strangers to

-20-

the agreement, such as creditors or lienholders." Id. at 701 (quoting Hong Kong and Shanghai Banking Corp., Ltd. v. HFH USA Corp., 805 F.Supp. 133, 140 (W.D.N.Y.1992) ) and citing Carlson v. Tandy Computer Leasing, 803 F.2d 391 (8th Cir.1986); Ferrari v. Barclays Bus. Credit (In re Morse Tool, Inc.), 108 B.R. 384, 386 (Bankr. D. Mass. 1989). In that regard, the court found that the only person that was a party to this choice of law provision was Portnoy himself. "Portnoy may not unilaterally remove the characterization of property as his simply by incorporating a favorable choice of law provision into a self-settled trust of which he is the primary beneficiary." Id.

Portnoy is distinguishable from the facts here. First, unlike Portnoy, we concluded, as did the bankruptcy court, that Sally and her trust had a substantial relation to Hawaii at the time it was created. Moreover, once the Portnoy court found insufficient contacts, its rationale for finding a "deeply rooted" New York policy was based on New York law applicable to self-settled trusts. The policy that a debtor should not be able to escape claims of his creditors by himself setting up a spendthrift trust and naming himself as beneficiary is not unique to New York, but also relevant in California. See Nelson, 202 P.2d 1021. However, because Herbert did not establish a self-settled trust to escape the claims of his creditors, the public policy behind self-settled trusts in California is not applicable here. As stated above, we found no California public policy on spendthrift trusts that warranted application of the public policy exception under the facts of this case.

-21-

The Portnoy court's second reason for applying New York law is also not relevant to this case. The Eighth Circuit's decision in Carlson v. Tandy Computer Leasing, 803 F.2d 391, 393-94 (8th Cir. 1986) discussed choice of law rules with respect to the Missouri Uniform Commercial Code ("U.C.C."). There, the parties to a contract involving computer equipment were Brock, the lessee, and Tandy, the lessor. Following the execution of the contract, Brock filed a petition in bankruptcy. The bankruptcy trustee attempted to claim the computer equipment for the bankruptcy estate on the basis that Tandy's interest in the property was an unperfected security interest. Whether the contract was deemed a lease or an installment sales contract would determine whether Tandy could repossess the equipment or whether the trustee had priority over Tandy with respect to the equipment. Id. at 393.

Brock and Tandy had agreed in the lease agreement that Texas law would apply, even though the equipment was located in Missouri. Citing § 1-105 of the Missouri UCC, the court noted that parties were generally free to choose which state's law shall govern, unless the dispute fell within an exception. Under § 1-105 of the Missouri UCC, there are five exceptions, all involving third party rights, where a choice of law clause in the contract would not prevail. One such limitation was found in § 9-102 of the Missouri U.C.C., which provided that Article 9 of the Missouri U.C.C. shall apply to any transaction intended to create a security interest in personal property located in Missouri. A "lease intended as security" is one type of security interest included in section 9-102.

-22-

The court further explained:

The policy behind section 1-105(2), especially as it relates to the scope of Article 9 of the Missouri U.C.C., is to prohibit choice of law agreements when the rights of third parties are at stake. . . . If we applied Texas law to determine whether a security interest existed here, this would violate a fundamental purpose of Article 9: to create commercial certainty and predictability by allowing third party creditors to rely on the specific perfection and priority rules that govern collateral within the scope of Article 9. In order to prevent the constant unilateral expansion and contraction of the scope of Missouri's Article 9, a Missouri court would apply Missouri law to determine the scope of Article 9 of the Missouri U.C.C.

Id. at 394. Ultimately, the Eighth Circuit found that the Missouri U.C.C. did not apply, but nonetheless upheld the district's court application of Missouri law and holding that the agreement between the parties was a lease.

The Portnoy court adopted the reasoning behind the U.C.C. choice of law rules for purposes of the self-settled trust involved. However, that reasoning does not apply under the facts of this case. We decline to import the rule in Portnoy simply because the Trustee enjoys the rights of a judgment creditor under § 544(a)(1). Further, importing such a rule under these circumstances would completely ignore Sally's intent when she created her trust. The choice of law rules in the Restatement state that only in the absence of a substantial relationship, or if public policy dictates, should courts deny a party's choice of law.

Last, in In re Morse Tool, Inc., 108 B.R. 384 (Bankr. D. Mass. 1989), the bankruptcy court disregarded a choice of law provision when ruling in an adversary action that was a fraudulent conveyance matter. The court found that the parties

-23-

to a contractual conveyance cannot in their contract make a choice of law that binds creditors who allege that they were defrauded by the conveyance. Id. at 386. The rule in this case has no bearing on the outcome of this appeal.

For all these reasons, we agree with the bankruptcy court that Sally's choice of Hawaii law should be applied to her trust. Accordingly, the bankruptcy court properly granted summary judgment in favor of Herbert on the choice of law issue.

Although § 541(c)(2) excludes the corpus of the trust from property of the estate, the postpetition distributions of income from a spendthrift trust may become property of the estate under § 541(a)(5)(A) if the trust is testamentary in nature. Relying on § 541(a)(5)(A), the Trustee maintained that she was entitled to $42,000 in income distributions that Herbert received for the 180 days after the filing of his bankruptcy.

The bankruptcy court rejected this position because § 541(a)(5)(A) does not apply to inter vivos trusts. In re Neuton, 922 F.2d at 1384 n.6. The Trustee concedes in her appeal brief that § 541(a)(5)(A) was inapplicable because the Sally Zukerkorn Trust was an inter vivos trust. Nonetheless, relying on In re Neuton, the Trustee asserts for the first time on appeal that the 180-day limitation under § 541(a)(5)(A) was immaterial and that once Herbert was actually paid distributions from the trust, the distributions became property of the estate under §§ 541(a)(6) and (7). These arguments do not appear in the record and the bankruptcy court's decision following the evidentiary hearing does not address either of these statutes. We decline to consider these issues which are raised for the

first time on appeal. <u>Cold Mountain v. Garber</u>, 375 F.3d 884, 891 (9th Cir. 2004).

## VI. CONCLUSION

For the reasons stated, we AFFIRM.

Dissent begins on next page.

JOHNSON, Bankruptcy Judge, dissenting:

The issue on appeal is whether a bankruptcy court should apply the trust laws of the forum state where the bankruptcy court sits and where the debtor elected to file his bankruptcy case (California) or, instead, the laws of another state (Hawaii) selected in a trust document by the benefactor of the debtor. In one sense, this issue is novel. Neither the appellant nor the appellee has cited any case directly on point and we could not find one either. No known case (federal, state or otherwise) addresses whether a court sitting in California should enforce Probate Code section 15306.5 against assets in a trust created by an instrument that invokes the trust law of another state or jurisdiction.

However, published cases throughout the country have considered the broader question of whether a court should apply the trust law of a forum state or the trust law of another state designated in a trust instrument. A review of those cases reveals a pattern in which the courts have generally declined to apply the trust law of a foreign jurisdiction selected by the settlor of a trust if doing so would harm creditors or other third parties. In other words, while some courts have applied the trust law of a foreign jurisdiction, they usually do not do so to the detriment of creditors or other third parties. When enforcing a judgment against assets of a trust, courts typically apply the judgment remedies of the forum state when those laws protect creditors more than the law of the other jurisdiction.

To avoid this result, the Debtor urges us to adopt a view

-26-

of the Restatement (Second) of Conflict of Laws ("Restatement") which applies to parties who consent to bilateral agreements. But that reasoning does not apply here. This is not a situation in which one party to a contract seeks to hold another party to the contract to a choice of law provision to which both parties agreed in the contract. To the contrary, the Debtor (who is not a party to the Zukerkorn trust agreement) seeks to enforce its terms against other parties (the trustee and creditors) who are also not parties to the agreement. Because the Restatement does not provide for this result, and should not be so interpreted, I respectfully dissent.

### I. Cases When Courts Disregard Choice of Law Provisions in Trust Instruments

In general, courts typically refrain from applying the trust law of a foreign jurisdiction selected by the settlor of a trust if doing so would harm creditors or other third parties. In most instances, the judgment remedies of the forum state apply. For example, in Marine Midland Bank v. Portnoy (In re Portnoy), 201 B.R. 685 (Bankr. S.D.N.Y. 1996), the debtor created a self-settled trust in the Jersey Channel Islands and transferred his assets into that trust. The debtor included in the trust instrument a provision that stated his creditors could not reach his assets. When the debtor filed a personal bankruptcy case in New York, one of his creditors asserted that the assets of the trust constituted assets of the bankruptcy estate. The debtor argued that (1) the trust instrument provided for the application of the law of Jersey Channel Islands (not New York) and (2) under the law of Jersey Channel

-27-

Islands, creditors could not reach the trust assets. The bankruptcy court disagreed for two reasons.

First, the bankruptcy court (like many other courts) declined to allow a debtor to shield assets from creditors by creating a self-settled trust. Second, the bankruptcy court applied New York law for an additional reason: "In addition there is a second basis upon which to apply New York law--a choice of law provision 'will not be regarded where it would operate to the detriment of strangers to the agreement, such as creditors or lienholders.'" Id. at 701 (citing cases). The court declined to enforce the choice of law provision in the trust agreement because doing so would harm "strangers to the agreement, such as creditors or lienholders." Id.

Other courts have followed the reasoning in Portnoy and not allowed a debtor to shield assets from a creditor by relying upon a trust instrument that invokes a foreign jurisdiction. Instead, when application of local law would protect creditors more than a foreign jurisdiction, the courts have applied the local law of the forum state when interpreting a trust agreement and not the foreign law selected in the trust instrument. Goldberg v. Lawrence (In re Lawrence), 227 B.R. 907 (Bankr. S.D.Fla. 1998) (Florida bankruptcy court followed Portnoy by applying Florida trust law and not the laws of a foreign jurisdiction selected in the trust instrument); Sattin v. Brooks (In re Brooks), 217 B.R. 98, 103 (Bankr.D.Conn. 1998) (Connecticut bankruptcy court applied Connecticut trust law, not the law of a foreign jurisdiction designated in a trust agreement, because application of the foreign laws would harm

-28-

creditors).

On appeal, the Debtor attempts to distinguish Portnoy and similar cases on the basis that these cases often involve fraud by the settlors in establishing the trusts. But the cases do not turn on this factual premise. To the contrary, the courts have been careful to state that the choice of law decision does not depend on whether or not fraud by the settlor exists. Indeed, they often declare that it is "irrelevant" whether the settlor of the trust intended to defraud creditors or whether the settlor was solvent at the time. Portnoy, 201 B.R. at 685, 698 (Bankr. S.D.N.Y. 1996) (stating that it is "irrelevant" whether or not the settlor of the trust intended to defraud anyone); Goldberg v. Lawrence (In re Lawrence), 227 B.R. 907, 917 (Bankr. S.D.Fla. 1998) (noting that it is "irrelevant" whether or not the settlor of a trust intended to defraud anyone); In re Brooks, 217 B.R. 98, 103 (quoting the Restatement (Second of Trusts) and stating that is "not relevant" whether or not the settlor has any intention to defraud his creditors). Likewise, the Restatement states that the intent of the settlor of a trust is not relevant when evaluating whether a self-settled trust can defeat the claims of creditors. See 1 Restatement (Second) of Trusts § 156, Comment a. ("It is immaterial that the settlor-beneficiary had no intention to defraud his creditors.").

Regardless of the intent of the settlor, choice of law provisions in trust agreements are not enforced if the law of the forum state prohibits self-settled trusts. If a trust instrument states that the trust is governed by the law of a

-29-

foreign jurisdiction, that choice of law is not honored if the beneficiary files a bankruptcy case in a different jurisdiction that prohibits self-settled trusts. As a matter of public policy, the laws of the forum state override the choice of law decision by the settlor. It is against public policy to enforce a trust provision from a foreign jurisdiction that would impose this kind of harm upon creditors.

### II. Cases When Courts Disregard Choice of Law Provisions in Other Contracts

On appeal, Herbert contends that his mother's trust is not a self-settled trust and, of course, he is correct. But Portnoy, Lawrence, Brooks, Cameron and similar cases establish precedent against enforcing a choice of law provision in a trust instrument if doing so would harm creditors. A settlor of a trust cannot invoke the laws of a foreign jurisdiction to the detriment of creditors or other third parties who are not parties to the trust instrument.

The idea that a choice of law provision in an agreement is not enforced to the detriment of third parties appears in other areas of the law. For example, in Carlson v. Tandy Computer Leasing, 803 F.2d 391, 393-94 (8th Cir. 1986), the debtor entered into a "lease" of certain computer equipment from Tandy pre-petition. After the debtor filed a bankruptcy case, the bankruptcy trustee sued Tandy arguing that the "lease" was actually a disguised installment sales contract and that Tandy should be treated as a seller of goods that retained an unperfected and avoidable security interest. Whether the contract was deemed a lease or an installment sales contract

would determine whether Tandy could repossess the equipment or whether the bankruptcy trustee had priority over Tandy with respect to the equipment.

Tandy and the debtor agreed in the "lease" agreement that Texas law would apply but the debtor filed the bankruptcy case in Missouri. Acting pursuant to his strong-arm powers as a hypothetical lienholder under section 544, the trustee contended that neither the trustee nor the creditors whose interests the trustee protected were bound by the choice of law provision in the "lease" agreement. The trustee argued for the application of Missouri law.

The bankruptcy court ruled in favor of the trustee. The Missouri bankruptcy court held that Missouri law applied and that under Missouri law, the "lease" should be treated as an installment sales contract. The district court reversed and held that the trustee was bound by the law selected by Tandy and the debtor in the "lease" agreement (Texas law) and that under Texas law, the agreement must be construed as a true lease. The Court of Appeals affirmed the decision of the district court but not its reasoning.

Instead, the Court of Appeals held that Missouri law applied. The Court of Appeals stated "[w]e conclude that because the dispute in question implicates the rights of third party creditors, Missouri law should be applied." Tandy, 803 F.2d at 393. The Court of Appeals was not willing to enforce the choice of law provision in the agreement against a trustee or other parties who were not parties to the agreement. The Court stated that the "present case is unlike those situations

-31-

where only the rights of parties privy to the initial choice of law agreement are implicated . . . . In those situations, no policy is furthered by refusing to allow the parties to select the law governing their rights alone." Id. at 394. When the rights of third parties are implicated, however, the Court did not enforce the choice of law provision in an agreement against non-parties.

Likewise, a similar result occurred in In re Eagle Enterprises Inc., 223 B.R. 290 (E.D. Pa. 1998), affirmed, 237 B.R. 269 (E.D. Pa. 1999). In Eagle, a German "lessor" purported to "lease" certain equipment to an American debtor. When the debtor filed a bankruptcy case in Pennsylvania, the chapter 7 trustee asserted that the "lease" was really a disguised security interest under the UCC and not a true lease and, because the German company had not perfected its security interest, it had no interest of any kind in the equipment. The German company responded by arguing that the debtor agreed in the lease agreement that German law would govern and, under German law, the agreement was a true lease.

The trustee prevailed. The Court declined to follow German law and, instead, applied the Uniform Commercial Code and held the agreement was not a true lease. In declining to enforce the choice of law provision selected by the parties, the Court noted that many courts have held that a choice of law provision in a contract is not valid if it negatively affects the rights of third parties. It may govern the rights between the parties but if the rights of a third party are also affected, the choice of law provision is not binding.

Under normal circumstances, contracting parties are free to stipulate what state's or nation's law will govern their contractual rights and duties, provided that the state or nation has a reasonable relationship with the transaction, and the law chosen does not violate a fundamental public policy of the forum state.... Nonetheless, **the parties' stipulation will not be regarded where it would operate to the detriment of strangers to the agreement, such as creditors or lienholders . . . .**

See In re Eagle Enterprises, 223 B.R. at 295 (emphasis added) (quoting Hong Kong and Shanghai Banking Corp. v. HFH USA Corp., 805 F.Supp. 133, 139-40 (W.D.N.Y. 1992)). A similar holding occurred in Ferrari v. Barclay's Bus. Credit, Inc. (In re Morse Tool, Inc.), 108 B.R. 384 (Bankr. D. Mass. 1989). In Ferrari, a bankruptcy trustee filed an action to avoid a security agreement as a fraudulent transfer. The parties to the agreement included a provision stating that Connecticut law would govern the agreement. The trustee attacked the agreement as a fraudulent transfer and the Massachusetts bankruptcy court decided whether it would apply Massachusetts law or Connecticut law. Following section 6 of the Restatement, the Court applied the law of the forum state (Massachusetts).

The Court refused to apply the choice of law provision in the agreement because the trustee (and the creditors of the debtor) was not a party to the agreement and the law selected would be disadvantageous to them. The Court stated as follows:

And one of the parties to this suit -- the Trustee, who stands in the shoes of the creditors -- was not a party to the contract. The parties to a contractual conveyance cannot in their contract make a choice-of-law that binds creditors who allege that they were defrauded by the conveyance. The choice-of-law binds only parties to the contract, not the Trustee or the creditors.

*Ferrari*, 108 B.R. at 386. The Court rejected the argument that, pursuant to section 187 of the Restatement, the choice of law provision selected by the parties to the agreement should control.

> Section 187 of the Restatement states that, under certain circumstances, 'the law of the state chosen by the parties to govern their contractual rights and duties will be applied.' Restatement (Second), § 187(1) and (2) (emphasis added). This section, on which Barclays relies, plainly applies only to suits between parties to a contract regarding their rights and duties under the contract. And it applies only where the parties to the suit have chosen which state's law will govern. Neither of these circumstances applies here.

*Id.* Because the parties to the lawsuit were not parties to the contract, it would be inappropriate to enforce the choice of law provision.

> . . . . the contract is not between the parties to the suit, but between two parties whom the plaintiff (a creditor or a bankruptcy trustee) alleges executed the contract for the very purpose of defrauding creditors. In view of this, it makes no sense to follow the choice-of-law clause in the agreement between Barclays and the Debtor. That would be tantamount to giving the defendant unilateral control over the choice-of-law, which clearly would violate the requirements of due process.

*Id.* at 387. Thus, cases such as *Tandy*, *Eagle* and *Ferrari*, decline to enforce a choice of law provision against individuals who are not parties to the agreement. That is true in this case. Herbert is not a party to the trust. Neither are his creditors nor the trustee. And Sally's creditors are not parties to the trust instrument either.

Indeed, no one agreed to anything with Sally. She simply selected a choice of law that she preferred and now Herbert wants

-34-

to use Sally's choice as a sword (or shield) against Herbert's creditors and the trustee. The California legislature will let her do so but only up to 75%. In that sense, this case presents a conflict between Sally and the California legislature. The latter should prevail.

### III. Similar New York Statutes

As discussed above, courts have declined to enforce choice of law provisions in trust instruments or other agreements if doing so would harm creditors or other individuals who are not parties to the agreement. Instead, they apply the law of the forum state in order to protect creditors. Therefore, in California, bankruptcy courts should enforce section 15306.5 of the California Probate Code which permits creditors to reach up to 25% of the assets of a spendthrift trust even if the trust instrument asserts California law should not govern. Although there is no specific case directly on point reaching this conclusion, other courts have done so under similar facts.

For example, the laws of the state of New York governing spendthrift trusts are similar to California law. In New York, spendthrift trusts are not fully protected. Section 5205 of the New York Civil Practice Code governs enforcement of judgments against assets held in a trust in New York and the provisions of Section 5205 are similar to California law. Section 5205(c) provides a general exemption for assets held in a trust (like section 15301(a) of the California Probate Code) and section 5205(d) creates an exception to this protection (like section 15306.5 of the California Probate Code) that permits a creditor to attach between 10% to 100% of the income from a spendthrift trust.

-35-

So, as in California, creditors may reach a portion of the income of a spendthrift trust (between 10% to 100%).  Although the percentages are different,[1] both states allow creditors to invade spendthrift trusts to some extent.

Given this statutory regime, New York courts have occasionally been called upon to address the issue that has arisen in the Zukerkorn case.  Specifically, if a creditor in New York seeks to enforce a judgment against a New York debtor who is the beneficiary of a trust agreement, can the creditor seek to be paid from trust assets under section 5205 even if the trust agreement states it is governed by Connecticut law or any law other than New York.  At least two New York cases have held that New York law applies.

For example, this issue was directly addressed in In the Matter of Wheat, 246 N.Y.S.2d 536 (1963).  In that case, John Wheat failed to pay spousal support to his former wife.  Mr. Wheat was the beneficiary of two trusts established by his deceased parents.  His ex-wife sought to attach the income from the trusts in New York.  The New York bank that acted as the trustee for the trusts opposed the enforcement of the judgment against the trust assets.  The New York court overruled that opposition and allowed the creditor to attach 10% of the income of the trust.

---

[1] California Probate Code section 15306.5 permits creditors to reach up to 25% of the assets of a trust.  The statute establishes a range of between 0% to 25%.  There is no minimum amount that creditors receive and a maximum of 25% exists.

In New York, creditors are entitled to a minimum of 10% of the income of a spendthrift trust and the court has the power to increase this 10% amount (theoretically) up to 100% to the extent (if any) that the trust assets are not necessary for the "reasonable requirements of the judgment debtor and his dependents . . . ."  See NY CPLR § 5205(d).

The New York court noted it was "undisputed" that Mr. Wheat's mother "was at the time of her death domiciled in Connecticut and that her will was admitted to probate in that State." Id. at 538. The Court also noted that the trust instrument was "executed and delivered in the State of Connecticut" and specifically stated that "it shall be governed and construed in all respects according to the laws of the State of Connecticut". Id. Although the New York court stated that generally "the laws of the State where the trust is established is ruled to be applicable", the New York court declined to follow Connecticut law for attachment purposes. The Court cited section 5205 which would allow the creditor to recover 10% and stated as follows:

> "The narrow question to be decided is whether the income from these two trusts is subject to attachment and, if so, to what extent. **Though the trusts may in many respects be controlled by the law of Connecticut, so far as the right to attachment is concerned we are required to apply the law of New York**. Attachment is a matter of remedy, and questions affecting it must therefore be ruled by the law of the forum . . . ."

Wheat, 246 N.Y.S.2d at 539 (emphasis added). So while the Court indicated that Connecticut law would apply when construing the trust generally, it would not supplant New York law for attachment purposes. In other words, the choice of law provision by the settlor would not defeat the rights of creditors under section 5205 against a New York debtor in a New York court.

The United States District Court for the Southern District of New York reached a similar conclusion in a tax case entitled United States v. Pearson, 67-1 U.S. Tax Cas. (CCH) P9460; 1967 U.S. Dist. LEXIS 10762 (S.D.N.Y. 1967). The Pearson case involved a complicated inter-creditor dispute in a case in which a debtor

was a beneficiary of a spendthrift trust established in Connecticut. The debtor had voluntarily assigned his interest in the trust to a creditor to secure a $50,000 loan and the New York District Court enforced that assignment based on Connecticut law.

Specifically, the District Court held that Connecticut law should apply when considering the voluntary transfer of the interest in the trust because the settlor and his wife resided in Connecticut at the time of their death. Since Connecticut law (at the time) allowed the beneficiary of a spendthrift trust to anticipate and assign an interest in a trust (which is typically not permitted in modern times) the creditor was able to enforce the assignment under Connecticut law even though New York law did not permit such assignments. In effect, the Court enforced the terms of the contract between the lender and ruled that, under Connecticut law, the assignment of an interest in a trust to secure a loan is enforceable.

However, another creditor (Annabelle Pearson) sought to levy on the assets of the trust in order to satisfy an unpaid debt. Ms. Pearson did not have a voluntary assignment from the debtor of any interest in the trust. Therefore, Ms. Pearson needed to rely upon New York attachment law. The New York District Court applied New York attachment law as to Ms. Pearson.

The Court held that under New York law, a provision in a spendthrift trust that prohibits creditors from reaching such assets is enforceable against the levying creditor.[2] However,

_____

[2] Pearson, 1967 U.S. Dist. LEXIS 10762 at *13 ("When New York law is applicable, by reason of Section 15 of the Personal Property Law as it existed during the prior proceedings herein and as it now exists, the right of Pearson to receive income
(continued...)

-38-

pursuant to section 5205, the levying creditor could reach 10% of the income of the trust.  The Court cited section 5205 as the available remedy and then quoted extensively from the decision in Wheat.[3]  As to the levying creditor (Ms. Pearson), the Court fully applied New York law against a testamentary trust which the Court considered otherwise governable by Connecticut law.  The Court held that the rights of the nonconsensual levying creditors should be governed by the attachment law of the forum state (New York). The Court stated:

> "Although, as heretofore determined, the validity of the voluntary assignment by Pearson must be controlled by the law of Connecticut as a substantive matter, the attempt of Rathkopf and Annabelle Webb Pearson to reach Pearson's income by judgment, attachment or suit, unlike that of Penn, must be determined as a procedural matter by the law of the State of New York."

Pearson, 1967 U.S. Dist. LEXIS 10762 at *14.  So, in both Wheat and Pearson, judgment creditors were able to invoke New York attachment law (section 5205) to invade spendthrift trusts otherwise governed by Connecticut law.[4]

### IV.  The Restatement

On appeal, Herbert wants the Court to apply section 187 of the Restatement to resolve this dispute.  Section 187 provides

---

(...continued)
under the testamentary trust cannot be transferred by assignment or otherwise.").

[3]  Pearson, 1967 U.S. Dist. LEXIS 10762 at *14-*17.

[4]  The Pearson decision was clearly not what Annabelle Pearson hoped for.  She apparently wanted the trust interpreted according to Connecticut law because New York law enforces anti-alienation clauses in trust agreements.  In that regard, applying New York law harmed Ms. Pearson, the levying creditor, because her claim was not paid in full.  But the Court still permitted her to invoke section 5205 and reach the assets of the trust "subject to whatever statutory limitations may be imposed under the laws of the State of New York."  Pearson, 1967 U.S. Dist. LEXIS 10762 at *23.

that a forum state should apply the law chosen by the parties unless a "fundamental policy" of the forum state provides otherwise. The "fundamental policy" test is a high standard and it makes sense for the Restatement to impose this high standard when the parties before a court have voluntarily selected a particular choice of law in their agreement. Parties to contacts should be held to their agreements.

But those facts do not apply to this case. Section 187(1) states that the "law of the state **chosen by the parties** to govern their contractual rights and duties will be applied . . ." and section 187(2) states that the "law of the state **chosen by the parties** to govern their contractual rights and duties will be applied . . . ." (emphasis added). None of the parties to the present appeal (not even Herbert) selected the law of Hawaii. That was the choice of Sally, not Herbert, the trustee or Herbert's creditors. Therefore, section 187 simply does not apply on its face and, likewise, the "fundamental policy" test does not apply either.

Instead, the introductory note to chapter 10 of the Restatement pertains to trusts and it states:

> The creation of a trust is a method by which the owner of property makes a disposition of it. The chief purpose in making decisions as to the applicable law is to carry out the intention of the creator of the trust in the disposal of the trust property. It is important that his intention, to the extent to which it can be ascertained, should not be defeated, unless this is required by the policy of a state which has such an interest in defeating his intention, as to the particular issue involved, that its local law should be applied. . . .

Section 270(a) of the Restatement states that a trust is valid if valid

. . . under the local law of the state designated by the settlor to govern the validity of the trust, provided that this state has a substantial relation to the trust and that the application of its law does not violate a strong public policy of the state with which, as to the matter at issue, the trust has its most significant relationship . . . .

Comment (b) to § 270 of the Restatement states:

Law designated by the settlor to govern validity of the trust. Effect will be given to a provision in the trust instrument that the validity of the trust shall be governed by the local law of a particular state, provided that this state has a substantial relation to the trust and that the application of its local law does not violate a strong public policy of the state with which as to the matter at issue the trust has its most significant relationship.

Section 270(a) of the Restatement has two prongs: "the substantial relation" prong and the "strong public policy" prong. Therefore, under section 270(a), Hawaii law would apply if Hawaii "has a substantial relation to the trust and that the application of its law does not violate a strong public policy of [California]."

**A. The Trust Does Not Currently Have A Substantial Relationship To The State of Hawaii.**

With respect to the former, Herbert argues that Hawaii has a "substantial relation to the trust". This was certainly true when Sally, Herbert and Jack were all alive and lived in Hawaii. However, as with many things in life, events changed.

Herbert has outlived Sally and Jack. Both died nearly three decades ago. The record indicates that Herbert is the only remaining primary beneficiary as Jack has died and Herbert's children have received his portion of the inheritance from Sally. Real property assets in Hawaii were sold and converted to cash a decade ago. Herbert controls millions of dollars in trust assets

-41-

as trustee and is the beneficiary of the assets of the trust. The interests of the trust and Herbert are closely aligned. This is Herbert's trust (at least in practical terms).

Therefore, when Herbert elected to move to California, the relationship between the trust and the state of Hawaii diminished. It no longer makes sense to state that Hawaii currently has a "substantial" relationship with the trust. A relationship may still exist between the trust and Hawaii but it is no longer substantial.

## B. California Probate Code Section 15306.5 Reflects A Strong Public Policy Under California Law.

But even if the Court accepted Herbert's argument that the trust he now controls in California still has a "substantial" relationship with Hawaii, the second prong of section 270(a) provides the most significant problem for Herbert. Applying Hawaii law would run afoul of a strong public policy embodied in California Probate Code section 15306.5.

As discussed above, choice of law provisions in trust instruments are not enforced in certain circumstances (i.e. with respect to self-settled trusts). The Courts agree that a "strong public policy" exists against self-settled trusts. On appeal, the Trustee argues that California has other important policies that support the application of California law instead of Hawaii law.

Specifically, the Trustee argues on appeal that section 15306.5 promotes equality between debtors in California. Under California law, individuals who work for a living and generate wages are subject to wage garnishment. Creditors may attach up to 25% of earned wages.

-42-

But the system of wage garnishment does not affect individuals who enjoy so much wealth that they need not work because they are the beneficiaries of spendthrift trusts established by wealthy parents or other benefactors. The garnishment procedure does not apply to income from trusts. Instead, the California legislature enacted Section 15306.5 to promote equality. Section 15306.5 (in concert with the wage garnishment laws) insures that debtors who receive income from a wealthy trust do not receive more protection from their creditors than people who must work and rely upon wages for income. This equal treatment seems reasonable and rational and reflects a sensible strong policy judgment by the California legislature.

Applying section 15306.5 is also consistent with those cases that do not enforce self-settled trusts. For example, Herbert does not dispute that Sally could not have shielded any of her assets from her own creditors. Neither Hawaii nor California law allowed her to do that. Instead, Sally wanted to provide a multi-million dollar gift to her sons (and grandchildren) and prevent their creditors from reaching those assets. The California legislature allows this type of transfer but not 100%. Creditors can reach up to 25% of those funds just like they can reach 25% of earned wages. There does not appear to be any reason to treat the multi-million dollar gift from Sally to Herbert any differently than the wages earned from an employer.

This issue is magnified when thinking about ordinary Californians who live from paycheck to paycheck. Most of those paychecks are subject to wage garnishment of up to 25%. Therefore, section 15306.5 promotes equality among debtors whether

-43-

they are rich or poor debtors. Treating similarly situated individuals equally constitutes a "strong" public policy which satisfies the requirements of section 270(a) of the Restatement.

The attachment laws in New York also support this view. As in California, New York treats wage garnishment and trusts the same. Under section 5205 of the New York Civil Practice Code, a creditor can reach wages and trust income to the same extent. Section 5205 treats these sources of income in the same manner and section 5205 is enforced even if a trust instrument seeks application of the laws of another jurisdiction. Section 15306.5 of the California Probate Code should be applied in the same manner. Section 15306.5 is entitled to the same respect as section 5205.

Also, a failure to apply Section 15306.5 would result in the inconsistent application of the law. Indeed, it would give Herbert the protection of the laws of two states in a manner that neither state contemplated. In effect, Herbert would enjoy the benefits of a new enhanced hybrid legal system.

Hawaii law protects assets in trusts more extensively than California law. On the other hand, California law contains very generous exemptions that are considerably better than Hawaiian exemptions.[5] Each state has created a combination of laws that protects the assets of debtors according to different criteria.

_____

[5] For example, the maximum homestead exemption in Hawaii is only $30,000 but the maximum in California is $175,000. Compare Hawaii Revised Statutes section 651-92(a)(1) and California Code of Civil Procedure section 704.730(a)(3). Likewise, the personal property exemptions in California appear to be considerably more generous than in Hawaii. Compare Hawaii Revised Statutes section 651-121 with California Code of Civil Procedure sections 704.010-704.210.

-44-

The legislatures of each state have reached different conclusions regarding which kind of assets should be protected and to what degree.

Herbert wants the best of both worlds. Herbert wants the benefit of Hawaii's more generous trust laws and California's more generous exemption laws. But doing so would not be consistent with the system of laws enacted in either state.

California allows more generous exemptions but is more restrictive in its trust laws. Hawaii has less generous exemptions but has more protective trust laws. Each legislature is best suited to look at the larger picture (in each state) and make appropriate adjustments unique to the needs of both states. A decision in favor of Herbert would give him the best of both worlds simply because he moved from Hawaii to California. Herbert would not have this advantage had he remained in Hawaii.

In that sense, Herbert seeks the benefits of his decision to move to California but not its burdens. Herbert wants the benefits of moving to California (enhanced exemption law) but not its burdens (reduced protection for trusts). But that would elevate Herbert to a status above most citizens of California (who do not benefit from Hawaii trust law) and most citizens of Hawaii (who cannot invoke California exemption laws). When contemplating a choice of law question, the better decision is to apply the law in such a manner that treats people equally to the greatest extent possible. This result not only promotes equality but also personal responsibility.

## V. CONCLUSION

Accordingly, for the reasons stated, I respectfully dissent.

-45-

Pursuant to section 270(a) of the Restatement, California law should apply, not Hawaii law.